Johnson, J.
The contention between the parties concerns the provision in the written contract with reference to the damages which should be payable by the vendee in case of a breach on its part. That provision is: “If buyer fails to furnish directions for shipment within original contract time or prior to the date of expiration of extension seller may * * (3) Terminate contract, in which case the following is agreed upon as the basis of settlement, viz.: the actual difference between the highest closing price of No. 1 Northern wheat in Minneapolis on the date of sale and date of cancellation as shown by the ‘Minneapolis Market Record,’ figuring four and one-half bushels of wheat for every barrel of flour, the buyer to reimburse the seller for carrying the wheat at the rate of one cent per bushel per month from date of sale to date of cancellation, plus two cents per bushel for buying and reselling the wheat, and two cents per bushel to cover loss of profit, if any, and inconvenience to seller resulting from failure of buyer to take out flour as per contract.”
The position of the defendant in error is that the method prescribed in the provision of the contract *183 quoted, for computing damages, amounts to a penalty and is not a provision for liquidated damages.
The court of appeals entertained the view in substance that there was no excuse for fixing a sum as liquidated damages in the contract; that as flour was an article or commodity which is bought and sold daily throughout the country, whose market value was not difficult to ascertain, it would be unreasonable and inequitable to enforce this contract in accordance with its terms.
It may be safely said that generally when parties enter into contracts they do so with the expectation that each will perform his part, and that the benefit which each expects to derive under the contract is the. inducement which leads him to make it. But there is no legal objection to including in their agreement provisions with reference to damages to be paid in the event of its breach. The contract may provide for payment of a stipulated or liquidated sum.
In view of the wide range and variety of contracts, and of their subject-matter, it is sometimes difficult to determine whether the terms thus agreed upon in advance actually provide for damages or for a penalty. Compensation for damages sustained is the legitimate object of such provisions, and where that object is lost sight of and a penalty imposed they will not be given effect by the courts. Equity will enjoin the enforcement of inequitable and unjust provisions of this nature and courts of law will refuse to enforce them. ■
The authorities generally agree that in the absence of fraud or illegality the question is one which *184 must be determined by a consideration of the subject-matter, the language of the contract, and the intention of the parties.
The rule is stated in 13 Cyc., 90: “As to whether a sum agreed to be paid as damages for the violation of an agreement shall be considered as liquidated damages or only as a penalty is held to depend upon the meaning and intent of the parties as gathered from a full view of the provisions of the contract,, the terms used to express the intent, and the peculiar circumstances of the subject-matter of the agreement. The contract is to govern; and the true question is, What was the contract ? Whether it was folly or wisdom for the contracting parties thus to bind themselves is of no consequence if the intention is clear. If there be no fraud, circumvention, or illegality in the case the court is bound to enforce the agreement.”
In Doan v. Rogan, 79 Ohio St., 372, it is held in the syllabus: “Whether a stipulation providing for liquidated damages for the breach of a contract is to be construed as liquidated damages or as a penalty depends upon the intention of the parties to be gathered from the entire instrument. While courts will not construe contracts in a way authorizing recovery for liquidated damages simply because the parties have used that term in the agreement, yet, where parties to a contract otherwise valid have in terms provided that the damages of the injured party by a breach on the part of the other of some particular stipulation, or for a total breach, shall be a certain sum specified as liqui *185 dated damages, and it is apparent that damages from such breach would be uncertain as to amount- and difficult of proof, and the contract taken as a whole is not so manifestly unreasonable and disproportionate as to justify the conclusion that it does not truly express the intention of the parties, but is consistent with the conclusion that it was their intention that damages in the amount stated should follow such breach, courts should give effect to the will of the parties as so expressed and enforce that part of the agreement the same as any other.”
The court, by Spear, J., in the opinion in that case, at page 388, quote from Dwinel v. Brown, 54 Me., 468, the same language formerly quoted by this court in The Knox Rock Blasting Co. v. The Grafton Stone Co., 64 Ohio St., 361: “The parties themselves best know what their expectations are in regard to the advantages of their undertaking and the damages attendant on its failure, and when they have mutually agreed on the amount of such damages in good faith and without illegality, it is as much the duty of the court to enforce that agreement as it is the other provisions of the contract.”
In the case at bar it is contended that the article contracted to be sold was' an ordinary commodity whose market value was easy to be ascertained, and that the measure of damages for the breach of a contract of sale is the difference between the contract price and the market price at the place of delivery. This is of course the general and well-settled rule in the absence of valid provisions in the *186 contract which require the application of a different measure. It is in harmony with the rule laid down in the Ohio sales act (99 O. L., 413), which is also cited by defendant. That is an “Act to establish a law uniform with the laws of other states on sales.” It was passed in response to a general desire for substantial uniformity in the legislation of the different states on all branches of commercial law. It is of high importance that everyone should know his rights and his obligations at all times and all places in connection with every transaction in which he engages. Every law that has been' passed in furtherance of that object should have its provisions enforced and its principles recognized wholly independent, and to the exclusion, of inconsistent decisions and doctrines previously declared. In this way only can the desired uniformity be sustained.
Sections 8444 and 8451, General Code (formerly Sections 63 and 71 of the sales act), provide as follows:
“Sec. 8444. (3) When there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept.”
“Sec. 8451. When any right, duty, or liability would arise under a contract to sell or a sale by im *187 plication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale.”
It must be noted that this contract was not silent on the subject. It contained an “express agreement” touching the “liability.” It provides that the basis of settlement shall be “the actual difference between the highest closing price of No. 1 Northern wheat in Minneapolis on the date of sale and date of cancellation as shown by the ‘Minneapolis Market Record,’ figuring four and one-half bushels of wheat for every barrel of flour, the buyer to reimburse the seller for carrying the wheat at the rate of one cent per bushel per month from date of sale to date of cancellation, plus two cents per bushel for buying and reselling the wheat, and two cents per bushel to cover loss of profit, if any, and inconvenience to seller resulting from failure of buyer to take out flour as per contract.”
It is apparent from this language that the parties themselves contemplated that the plaintiff should not be required to speculate upon the price of wheat, whose fluctuating character must have been well known to both, but that the transaction should proceed on the idea that the plaintiff should purchase a sufficient quantity of wheat on the. day of sale. Not only this, but it is apparent from the contract that the parties themselves contemplated that this wheat should not be at once manufactured into flour, but should be held or “carried” until near the *188 time when the plaintiff would be required to manufacture the flour from it. Otherwise the provision as to the highest closing price of No. 1 Northern wheat on the date of sale, and the provision to reimburse the seller for carrying the wheat at one cent per bushel per month and two cents for buying and reselling the wheat, would be wholly unnecessary and meaningless. Under the clause, “and two cents per bushel to cover loss of profit, if any,” the plaintiff waived any claim.
We think that a consideration of the whole instrument forces the conclusion that the contract did not provide for, and the parties did not contemplate, a direct sale of the flour as an ordinary commodity, as it might have done if the parties had so desired; but it provided for, and they contemplated, the purchase of the wheat at once and the future manufacture and delivery by the plaintiff of the amount of flour within the period covered by the terms of the contract. With these steps in contemplation the parties contracted that defendant should reimburse plaintiff for any loss on account of the purchase of the wheat in case defendant refused to take the flour, or “fails to furnish directions for shipment.” The parties in this case were fully competent to contract. Each was fully able to consider and provide for his own interest. It is not claimed that there was any fraud or circumvention in connection with the negotiation, and we can conceive of no injustice, or inequity, in the enforcement of the terms of a contract thus made, which contemplated the purchase by the seller of sufficient *189 wheat to supply the commodity to be manufactured and delivered thereafter during a period of a number of months. The parties agreed that wheat, the thing from which the flour was to be made, should be the basis upon which to calculate damages. They could, of course, have agreed that the flour should be such basis, but they did not do so. That was a matter for them to agree about. They did not fix an arbitrary lump sum which might turn out to be-wholly inequitable, but fixed a method, the chief element of which was the price of 'wheat from which the flour was to be made, a matter not within the. control of either. In this situation when the plaintiff. proved it had performed the terms of the contract on its part, had purchased the necessary wheat, and showed the damages that had accrued oh the basis agreed on, it was entitled to recover.
In Russell Miller Milling Co. v. Bastasch, 70 Ore., 475, relied on by defendant in error, it is held: “In an action for a breach of contract to purchase flour, a custom of the plaintiff on purchases for future delivery of setting aside a quantity of wheat sufficient to be manufactured into the flour ordered cannot be considered, where the parties are not shown to have contracted with reference to it and no knowledge of it is imputed to the defendants in either, pleadings or evidence.” That was an ordinary suit for damages and did not involve the question made here as to liquidated damages or penalty. In the case we have here, it will also be noted, the plaintiff does not assert a “custom” but an express contract, in which the parties are “shown to have contracted with reference” to the basis of settlement.
*190 The view that the measure agreed on in the contract was reasonable and just is supported by Erie Baking Co. v. Hubbard Milling Co., 217 Fed. Rep., 759, which was likewise a suit for breach of contract and involved simply the proper measure of damages. The court say: “At the time the contract was made the Milling Company did not have the flour on hand, so that the parties agreed, not upon the sale of an article already made, but upon the manufacture and sale of an article not yet in being. For the breach of such a contract it is apparent that the measure of damages generally applied — namely, the difference between the price agreed upon and the market price at the time of the breach — may not properly compensate the manufacturer, and in that event another measure that will compensate him should be applied.”
Testimony tendered by the defendant in the trial court, tending to show the market value of the flour at the time of the breach and at the place of delivery, was rejected by the court. Of course, if the measure of damages to be applied in the case was the difference between the contract price and the market price of flour as an ordinary commodity at the time of the breach, the testimony was wrongfully rejected, but in the view we have taken of the language of the contract this was not the proper measure, and, therefore, the court did not err in rejecting the testimony.
In the construction of the contract and in arriving at the intention of the parties the learned court of appeals did not give the provisions to which we *191 have referred the controlling effect that we think is required by correct interpretation.
The judgment of.the court of appeals will be reversed and that of the common pleas affirmed.

Judgment reversed.

Nichols, C. J., Wanamaker, Newman, Jones, Matthias and Donahue, JJ., concur.