Argued June 26, decided July 2, 1912.

## MANERUD v. CITY OF EUGENE.

[124 Pac. 662.]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS—PERFORMANCE.

1. Where a contract for the construction of a public improvement expressly provided that the contractor should not be entitled to damages, but only to an extension of time, for delay on the part of the city in performing its part of the contract, damages for such delay were not recoverable.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS—REMEDIES OF CONTRACTOR.

2. Where a contract for the construction of a public improvement provided that, if any changes in the plans were made, the contractor

should be paid at the contract price for only the amount of work actually done, the contractor could not recover damages for changes in the plans without proving the amount of extra work thereby necessitated.

MUNICIPAL CORPORATIONS— PUBLIC IMPROVEMENTS— CONTRACTS— RIGHTS AND REMEDIES OF CONTRACTOR.

3. Where the plans and specifications for a public improvement were on file and a matter of public record when the contract was made, the contractor could not recover damages sustained by him as a result of defects in the plans.

MUNICIPAL CORPORATIONS— PUBLIC IMPROVEMENTS— CONTRACTS— RIGHTS AND REMEDIES OF CONTRACTOR.

4. A person contracting with a city to construct a public improvement could not recover damages for the failure of the city engineer to perform work customarily performed by the engineer on such an improvement, in the absence of proof that the city knew of such custom, or that it was of such general notoriety that a presumption of such knowledge could be indulged.

CUSTOMS AND USAGES—EVIDENCE—ADMISSIBILITY.

5. Under Section 727, L. O. L., providing that evidence may be given of usage to explain the true character of an act, contract, or instrument where it is not otherwise plain, but that it is never admissible except as a means of interpretation, evidence of a usage or custom is admissible to explain, but not to add to or contradict, a contract.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—CONTRACTS—PAYMENT.

6. Under a municipal contract for the construction of a public improvement, providing that the city engineer each month should make a partial estimate of the amount due the contractor, 80 per cent of which should be paid the contractor at that time, the engineer is the arbiter of how much should be paid as the work progresses, and the contractor cannot recover damages because such estimates are incorrect.

From Lane:   LAWRENCE T. HARRIS, Judge.

Statement by MR. JUSTICE BURNETT.

This is an action by Sam Manerud and Edward Quinn, copartners as Manerud & Quinn, against the city of Eugene.

It is admitted by the parties that the contract mentioned in the complaint was entered into between the plaintiffs' assignor and the city of Eugene. The material parts of that contract and the specifications alluded to therein are here set out:

"That the said contractor, in consideration of the covenants, agreements and payments hereinafter men-

tioned to be performed and made by the said city, hereby covenants and agrees, under the penalty expressed in the attached bond, bearing even date herewith, to construct a canal for a power plant for said city, in accordance with the attached proposal and specifications, which are hereby declared and accepted as parts of this agreement, and to accept payment for said work at the prices named in said proposal as full compensation under this contract.

"The contract prices shall include all labor and expense necessary to complete the work according to the plans and specifications on file in the office of the city recorder of the city of Eugene, and to maintain it in good condition until accepted by the engineer.

"No allowance shall be made for extra work of any kind unless such work shall have been ordered in writing by the mayor and city council of said city.

"The contractor shall not be entitled to damages on account of delay, but if such delay be occasioned by the city the contractor shall be entitled to an extension of time in which to complete the work, to be determined by the engineer.

"The contractor shall complete all the work to be done under this contract on or before the first day of October, 1909, and it is hereby agreed that if the work is not completed at that time the city may deduct from the amount due the contractor the sum of fifty dollars ($50) per day for each and every day that the work remains unfinished after that date, which said sum of $50 per day is, in view of the difficulty of estimating such damages, hereby agreed upon by the parties hereto as liquidated damages that the city will suffer by reason of the failure of the contractor to complete the work within the time agreed.

"A partial estimate shall be issued by the engineer at the end of each calendar month for the amount due the contractor for the work done during the month and the city shall pay the contractor eighty per cent (80%) of the amount of such estimate and retain twenty per cent (20%) until the completion of the work and its acceptance by the engineer. When the contractor has completed the work to the acceptance of the engineer, then the engineer shall issue the final estimate for the balance due the contractor, including the retained percentages, and the city

shall pay and the contractor shall receive the amount of said estimate as full compensation for all work done under this contract.

"Specifications.—These specifications are for the work of constructing a canal for a power plant on the McKenzie River, about fifteen miles from the city of Eugene, Oregon.

"The canal will have a bottom width of twenty feet, and will be approximately 3¾ miles in length.

"The work of constructing the regulating gates, flumes, bridges and culverts will be done under a separate contract, or by the city of Eugene.

"Excavating shall include the work of excavating and removing all material necessary to be moved in excavating for the canal and in constructing embankments where the material is borrowed from the side.

"Excavating shall be paid for under the following classifications:

"Earth, which shall include all earth, sand, clay, hardpan, gravel and all other material except cemented gravel and solid rock.

"Cemented gravel, which shall include gravel cemented in place, which requires blasting to remove.

"Solid rock, which shall include all rock in ledges which cannot be removed without blasting, and boulders exceeding one-half cubic yard in size.

"The canal shall be excavated true to line and grade and to uniform width. The sides of the canal shall have a uniform slope of one and one-half horizontal to one vertical, and they shall be even and true. The material taken from the excavation for the canal shall be wasted upon the sides of the canal, leaving a berm of five feet except where the excavated material is required for constructing embankments.

"The material excavated from the canal when required for embankments, shall be hauled into the embankment where directed by the engineer, without additional charge, if the distance hauled does not exceed 500 feet. If the haul is more than 500 feet, the contractor shall be paid two cents per cubic yard for each 100 feet that the material is hauled over 500.

"Embankments shall be constructed along the lower side of the canal, where the depth of excavation for the

canal is less than seven and one-half feet. The embankments shall have a top width of ten feet, and slopes of one and one-half horizontal to one vertical.

"The embankments shall be put in layers not to exceed one foot in thickness, and the material compacted by driving over it with teams in hauling the material into the embankment. Where the material used in the embankment is gravel, sufficient earth shall be mixed with it to make the embankment water tight. The contractor shall construct the embankment of material taken from the excavation of the canal or from the borrow pits, as directed by the engineer, leaving a berm of not less than fifteen feet outside the toe of the embankment. Before the embankment is constructed, all stumps, roots, brush and trash shall be removed between the slope stakes, and the surface of the ground plowed.

"The contract price for excavating shall include the furnishing of all labor, material, and expense necessary to construct the canal according to the plans and specifications including the clearing, grubbing, and draining, and maintaining the work in good condition until accepted by the engineer.

"Excavating shall be paid for by the cubic yard, measured in the excavation. Embankment borrowed shall be paid for by the cubic yard at the contract price for excavating earth, measured in the borrow pits.

"The city of Eugene shall have the right to make any changes in the plans, grades or lines that it may deem necessary, after the contract is awarded. If the changes diminish or add to the quantity of work to be done under the contract, the contractor shall be paid at the contract price for only the actual amount of work done, as herein specified.

"All work shall be done in a first-class workmanlike manner, according to the plans and specifications and to the acceptance of the engineer.

"Where the word 'engineer' is used in these specifications it refers to the engineer employed by the city of Eugene to supervise the construction of the power plant."

The plans alluded to in the contract as being on file in the office of the city recorder with the specifications are not attached to the bill of exceptions. Although the con-

tract specifies that the work must be accomplished by October 1, 1909, it is admitted by the pleadings that, in consideration of the delay on account of a suit to enjoin the construction of the canal and of an action to condemn the right of way across the lands of Mr. Millican, the time was extended to January 1, 1910, in which to complete the enterprise. It is admitted that after the execution of the contract the council authorized the mayor of the city and the fire and water committee to transact all business relating to the construction of the power plant mentioned. It is further admitted by the pleadings that the rates of payment for excavating materials, either in the canal itself or in borrow pits, should be by the cubic yard, as follows: For earth, 31½ cents; cemented gravel, 75 cents; solid rock, $1.50; and for hauling materials into an embankment as directed, two cents for each 100 feet in excess of 500 of distance. The plaintiffs aver that at great expense they made preparation to accomplish the undertaking, doing much preliminary work in the construction of the canal, and in excavating cuts, and in building embankments removed 75,724.5 cubic yards of earth, 26,581.5 of cemented gravel, and 2,549 of solid rock, besides hauling, when directed by the engineer, an average distance of 900 feet 18,193 cubic yards of material taken from the canal and placed on the embankments; and that they have always been ready, able, and willing to complete their contract, and have actually performed it except so far as they have been prevented by the defendant. They also aver in substance that they were hindered and delayed by the action of the defendant, among other things, in these: That the city refused to secure the right of way for the canal and for space on which to waste the material excavated and for borrow pits until long after the same was needed and should have been secured; that the defendant failed and refused to furnish suitable plans or specifications for the building of the canal; that it is

necessary, usual, and customary for the engineer in charge of earth construction to cross-section the same and mark the side lines thereof with stakes, all of which he failed to do; that it was necessary, usual, and customary for the engineer in charge of work of the character involved in the canal in question to remain upon the ground or to furnish a competent subordinate, to give the contractor from time to time such information and direction as might be necessary to the proper construction of the work, each and all of which the engineer in charge of this canal failed and refused to do; that the defendant ordered frequent changes in the canal and made mistakes in giving lines and grades thereof, causing loss of time to and imposing extra work on the plaintiffs; that the engineer neglected to furnish the required monthly estimates of the quantities of material removed until long after the computations should have been made; and that the defendant failed and refused to pay plaintiffs any part of the eighty per cent of the several estimates made by the engineer until long after the time stipulated therefor. The plaintiffs' alleged grievances are summed up by the statement in substance, that injury resulted from the wrongful acts and omissions of the defendant, retarding work on the canal until about the middle of November, 1909, when labor had to be suspended by reason of the great rainfall and flood in the valley where the canal is located, rendering it impossible to proceed until about the middle of April, 1910, so that the work was suspended with the approval of the defendant and its engineer and with the understanding and agreement between the parties that operations would be resumed by the plaintiffs as soon as conditions would permit; that during the interval between November, 1909, and the middle of April, 1910, they made preparations to continue the work, but three days later defendant wrongfully and without cause notified the plaintiffs that, in consequence of their violation of the con-

tract, the city refused longer to be bound thereby and would take possession of the right of way and complete the canal, whereupon it immediately put the threat into execution and ousted plaintiffs therefrom, preventing them from continuing the work.    Charging that they had earned in their labors $50,887.46, had expended in clearing the right of way about $3,500, the benefit of which they had lost by the acts of the defendant, and that they were damaged in addition to their earnings in the further sum of $21,500, no part of which had been paid except the sum of $26,533.60, they demanded judgment for the sum of $46,273.86 with interest on the sum of $24,353.86 from November 16, 1909, at the rate of six per cent per annum.

Aside from the admissions already noted, the answer denies every allegation in the complaint except as further stated.    After reciting the contract according to its legal effect as already set forth in the complaint and stating that it had secured the right of way for all purposes at the proper time and generally had performed its part of the contract, the city accuses the plaintiffs of various acts of negligence and maladministration in respect to the manner in which they had performed the work up to the time the defendant was compelled to take charge of it. The answer further avers that during November, 1909, against defendant's consent the plaintiffs abandoned the work and thereafter refused to continue the same, although so requested by the proper city agent, and that on account thereof the defendant terminated the agreement April 18, 1910, and immediately thereafter entered upon and completed the canal at a reasonable expense therefor exceeding the unpaid portion of the stipulated price in the sum of $14,582.03, for which sum it demands judgment as damages for the violation of the contract by the plaintiffs, together with the further sum of $5,400; it being $50 per day as liquidated damages for 108 days after January 1, 1910, until the contract was rescinded.

For a still further defense the alleged shortcomings of the plaintiffs are restated together with the allegation that at the time the work on the canal was suspended in November, 1909, they had excavated 96,630.9 cubic yards of earth, 600 of solid rock, and hauled 47,115 of dirt an average distance of 600 feet, which constituted the total work done by plaintiffs on said canal; that, on account of the abandonment of the enterprise by the plaintiffs and of their negligent and unskillful manner of doing what had been already accomplished, the city found it necessary, in order to save itself from irreparable loss and damage, to terminate the contract as it did on April 18, 1910; that defendant had paid the plaintiffs on the contract the sum of $26,533.60, being the full value and whole compensation for all work performed by them under the agreement and complete remuneration for any alleged damages the plaintiffs may have sustained.

The reply traversed the answer in material particulars. There was a trial by jury resulting in a verdict and judgment for the plaintiffs in the sum of $6,525.90. Dissatisfied at this reduction of their claim, they have appealed.

AFFIRMED.

For appellants there was a brief and an oral argument by *Mr. John C. Jenkins*.

For respondent there was a brief over the names of *Mr. John M. Pipes,* city attorney, *Mr. Lark Bilyeu, Mr. G. F. Skipworth, Mr. Sjur P. Ness,* and *Mr. Martin L. Pipes,* with an oral argument by *Mr. John M. Pipes.*

MR. JUSTICE BURNETT delivered the opinion of the court.

There are fifty-one assignments of error noted in the abstract. It is impossible within the limits of an ordinary opinion and, considering the nature of some of them, unprofitable, to examine all these alleged errors. The essence of plaintiffs' grievance, as stated, is that the city

entirely failed to comply with part of its contract and was dilatory in what it did perform. Without going into the elaborate detail which would be necessary in a minute consideration of the plaintiff's numerous objections, we must content ourselves with some general observations upon the construction proper to be given to the contract involved.

1. Under its terms mere delay of the city constitutes no ground for damage. It only extends the time for the plaintiff to complete the work within the discretion of the engineer, for the contract itself stipulates thus:

"The contractor shall not be entitled to damages on account of delay, but if such delay be occasioned by the city the contractor shall be entitled to an extension of time in which to complete the work, to be determined by the engineer."

2. It is provided in the specifications as follows:

"The city of Eugene shall have the right to make any changes in the plans, grades or lines that it may deem necessary, after the contract is awarded. If the changes diminish or add to the quantity of work to be done under the contract, the contractor shall be paid at the contract price for only the actual amount of work done, as herein specified."

This furnishes the rule for compensation of the plaintiffs for increased work done on account of the alleged changes. True enough, it is said in the complaint that the defendant and its engineers frequently changed the lines and grades of the canal, thereby causing great loss of time and extra work, and required plaintiffs to increase the height of the embankment after the same had been completed according to contract. But whether that resulted in ten yards of excavation or fifty yards increased fill on the embankments is not stated. Such data as this are necessary in order for the court to determine the amount of compensation which should have been awarded to the plaintiff on account of extra work, if any was

required by reason of the changes made by the direction. of the defendant's engineer.

3. The complaint blames the defendant for not furnishing plans in sufficient detail. The language of the contract in that respect is:

"The contract prices shall include all labor and expense necessary to complete the work according to the plans and specifications on file in the office of the city recorder of the city of Eugene, and to maintain it in good condition until accepted by the engineer.

Owing to the fact that the plans are not set out in the bill of exceptions, we are unable to construe them, and, if we were thus equipped, it is a sufficient answer to the contention of plaintiffs in this respect that if the delineations were not wrought out in detail enough to meet their approval they ought not to have engaged on such drawings to build the canal. According to their contract, these plans and specifications were on file in the office of the city recorder, a matter of public record which they could consult before undertaking the work. Then was the time to object to the sketches and require them to be worked out in greater detail. It is too late, after having signed the contract, to urge that objection.

4. The complaint says "that said defendant and its engineer failed, neglected, and refused to furnish either the said Manerud or these plaintiffs with either suitable or sufficient plans of said canal, such as are usually and customarily furnished in cases of like character; that it is necessary, usual and customary for the engineer in charge of the construction of work of the character of the proposed canal to cross-section the same at every station and to mark the side lines thereof with stakes or otherwise indicate thereon the depth of the excavation or the height of the fill before the work is commenced thereon; and the performance of the contract by the plaintiffs without such work by the engineer would be impossible."

5. By Section 727, L. O. L., "evidence may be given on the trial, of the following facts: * * (12) Usage to explain the true character of an act, contract, or instrument where such true character is not otherwise plain, but usage is never admissible except as a means of interpretation." Usage or custom may be employed to explain, but never to add to or contradict, a contract. *Holmes* v. *Whitaker*, 23 Or. 319 (31 Pac. 705). If custom is to be pleaded as an element of plaintiffs' case, it must be shown to be, among other things, general in the business involved and that it was either known to the party or of such general notoriety as to support the presumption that it was thus understood: *Hendricks* v. *Middlebrooks Co.*, 118 Ga. 131 (44 S. E. 835); *Norwood* v. *Alamo Fire Insurance Co.*, 13 Tex. Civ. App. 475 (35 S. W. 717); *Lindley* v. *First National Bank*, 76 Iowa 629 (41 N. W. 381: 2 L. R. A. 709: 14 Am. St. Rep. 254); *Mobile Fruit & Trading Co.* v. *Judy*, 91 Ill. App. 82; *Sipperly* v. *Stewart*, 50 Barb. (N. Y.) 62; *Robinson* v. *New York, etc., Steamship Co.*, 63 App. Div. 211 (71 N. Y. Supp. 424); *Rickerson* v. *Hartford Fire Insurance Co.*, 149 N. Y. 307 (43 N. E. 856).

The record discloses no statement in the pleadings, nor, so far as the bill of exceptions shows, any evidence of knowledge on the part of the defendant of the alleged custom or any statement that it is of such general notoriety as would authorize us to indulge the presumption that the defendant was aware of or contracted with reference to it.

6. The plaintiffs complain of the conduct of the defendant's engineer in making the estimates at the end of each month. The provision of the contract already quoted is substantially that a partial estimate shall be issued by the engineer at the end of each calendar month for the amount due the contractor for the work done during the month,

and the city shall pay to the contractor eighty per cent of such estimate, retaining twenty per cent until the completion of the work and its acceptance by the engineer. A fair construction of this stipulation is that it means the engineer shall be the arbiter of how much should be paid as the work progresses. It does not mean that all the excavation or other work shall be paid for in full, or even eighty per cent of the full price at the end of each month. Only a partial estimate of the work performed was required, and even then only eighty per cent of the incomplete appraisement was imposed upon the city as a payment. Otherwise a contractor might do the easy part of the work, and abandon the other at a profit on the whole transaction, although he was deprived of the remaining twenty per cent of the estimate. Plaintiffs have shown no cause of complaint under this clause of the contract.

There were sundry instructions given by the court, of which the plaintiffs complain, all relating to what would amount to an abandonment of the work by the plaintiffs or what would excuse them from the imputation of such fault. These become unimportant in view of the fact that the jury found the issue on that subject in favor of the plaintiffs and rendered a verdict against the defendant.

There are many other unimportant assignments of error, such as asking leading questions and receiving answers thereto, all of which are largely within the discretion of the court, apparently not abused in this instance. They are not sufficient, however, in our judgment to affect the result, and hence the judgment must be affirmed.                    AFFIRMED.