Argued April 17, reversed May 26, 1914.

# RUSSELL MILLER MILLING CO. *v.* BASTASCH.

### (142 Pac. 355.)

**Customs and Usages—Operations and Effect.**

1.   In an action for a breach of contract to purchase flour, a custom of the plaintiff on purchases for future delivery of setting aside a quantity of wheat sufficient to be manufactured into the flour ordered cannot be considered, where the parties are not shown to have contracted with reference to it and no knowledge of it is imputed to the defendants in either pleadings or evidence.

> [As to effect and proof of customs and usages, see notes in 50 Am. Dec. 97; 18 Am. Rep. 204.]

**Sales—Breach of Contract—Damages—Measure.**

2.   Where a contract for the sale of flour for future delivery does not call for the manufacture of particular wheat into the flour, the decline of price of wheat reserved for the order cannot be taken as an element of damages for breach of contract by the buyer.

> [As to measure of damages against vendee for refusing to perform his contract, see note in 67 Am. Dec. 275.]

From Multnomah: JOHN P. KAVANAUGH, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

The plaintiff, Russell Miller Milling Company, a North Dakota corporation, brings this action against Andrew Bastasch, Carl Bastasch and Rudolph Kissling, composing a bakery firm known as the New York Bakery and doing business in the City of Portland, and declares upon an alleged breach of an executory contract for the sale by plaintiff to the defendants of 1,800 barrels of flour of the brand known as Electric Light to be shipped from time to time from North Dakota to Portland between August 23, 1910, and August 30, 1911.   The plaintiff alleges the making of the contract as indicated; that 205 barrels were delivered; and that on April 18, 1911, the defendants without cause repudiated the contract and refused to accept any more flour, although at all times up to and includ-

ing August 30, 1911, the plaintiff was ready, able, and willing to perform the contract on its part. Alleging "that by reason of the aforesaid facts and the breach of said contract by the defendants as aforesaid, plaintiff has been damaged in the sum of $1,600, no part of which has been paid," and demands judgment for that sum.

The defendants deny the damages and the breach assigned, and admit the making of the contract which is in the form of an order for that amount of flour. The defendants allege, in substance, that the agent of the plaintiff through whom the contract was negotiated knew that the defendants were purchasing the flour to be used in the manufacture of the best quality of bread for sale in Portland, and represented to the defendants that the flour contracted for was the highest grade manufactured in the United States, and would produce bread of the finest quality; further, that the plaintiff shipped to the defendants 205 barrels of flour under the contract; that the defendants paid for the same without an opportunity to examine it; but that on trial it proved to be of an inferior quality and would not produce good bread, and, upon being informed of the result of the test, the agent of the plaintiff notified the defendants that they could consider the contract mentioned in plaintiff's complaint canceled, and plaintiff would carry out the contract with another grade of flour manufactured from wheat raised in Montana. The answer concludes with an allegation in substance that the defendants, always since the execution of the contract, have been ready, able, and willing to receive from and to pay plaintiff for flour of the kind contracted for to the extent of the order. The reply denies all the affirmative matter of the answer inconsistent with the complaint. From

a judgment upon a verdict in favor of the plaintiff, the defendants appeal.   REVERSED AND REMANDED.

For appellants there was a brief over the names of *Mr. Joel M. Long* and *Mr. Miller Murdoch,* with an oral argument by *Mr. Long.*

For respondent there was a brief over the names of *Mr. A. E. Clark* and *Mr. Malcolm H. Clark,* with an oral argument by *Mr. A. E. Clark.*

MR. JUSTICE BURNETT delivered the opinion of the court.

As stated, the action is one based upon an alleged breach of an executory contract for the sale of personal property. The defendants answering do not allege any fraud or deceit by which they were induced to make the contract. The allegations about the inferior quality of the flour are redundant, or, at best, mere matters of inducement leading to the allegation that the plaintiff by its agent agreed that the contract should be canceled. No counterclaim for damages on account of the defect in the flour delivered and accepted is stated, and hence nothing can be claimed by the defendants on account thereof. The question raised by them respecting the right to inspect goods before receiving them is academic in its nature and not material in this case. A denial of the right of inspection before receiving the goods, if insisted upon by the defendants, might furnish ground for a rescission of the contract. Even then the defendants would have to act on the right to rescind and give the plaintiff timely notice of the rescission. The defense, however, does not proceed from that theory. On the contrary, the contention of the answer is that the de-

fendants were always ready and willing to accept and pay for the flour ordered, if the plaintiff would deliver the quality stipulated.

1. On the assumption that the defendants had broken the contract by refusing to order any more flour after the first shipment had been received, the court over the objection of the defendants allowed the plaintiff to show that it was its custom, on receiving orders for flour for future delivery, to set aside a sufficient amount of wheat from which to manufacture the amount of flour ordered and carry it upon its books at the then prevailing price of wheat, in what was called a hedge account, crediting it with flour as the same was delivered, until the order was filled. With this as a basis, the court over the further objection of the defendants allowed the plaintiff to show that wheat thus set aside had depreciated in market value from the time the order was given until a breach of the agreement by the defendants, all for the purpose of affecting the amount of damages to be recovered by adding the amount of decline in the price of wheat to the difference between the contract price of the flour and the market price of the same at the time of the breach.

It may be remarked in passing that a custom cannot be received to affect the express terms of a contract. It can be used only as an aid to its interpretation, and not then unless the custom was known to both parties at the time the contract was made or was of such universal prevalence as to raise the presumption that both parties were aware of its existence: *Holmes* v. *Whitaker*, 23 Or. 319 (31 Pac. 705); *Willis* v. *Lance*, 28 Or. 371 (43 Pac. 487); *Savage* v. *Salem Mills Co.*, 48 Or. 1 (85 Pac. 69, 10 Ann. Cas. 1065); *Manerud* v. *Eugene*, 62 Or. 196 (124 Pac. 662). The

custom was not pleaded, the parties are not shown to have contracted with reference to it, and no knowledge of it is imputed to the defendants in either pleadings or evidence; hence its consideration as a factor in the trial was erroneous.

2. The decline in the price of wheat cannot be taken as an element of damages in this case because there is nothing in the complaint indicating that any special article of merchandise was to be manufactured by the plaintiff for the defendants out of any particular material to be used for the purpose. It is a plain question of a breach of an executory contract for the sale of personal property at a price specified. The measure of damages for a breach of such a contract by the purchaser is the difference between the contract price and the lesser market value of the goods at the time of the breach of the contract. This is the rule laid down for cases of this nature in *Kingman* v. *Western Manufacturing Co.,* 92 Fed. 486 (34 C. C. A. 489), a precedent cited by the plaintiff. Other rules are there stated respecting the measure of damages in actions where materials have been purchased and labor bestowed upon them, but they have no application to the case pleaded in the complaint here. For aught that appears in this case, the plaintiff could have gone into open market and purchased flour to fill its contract. All questions about the purchase of material and the decline in price thereof were foreign to the issue framed by the pleadings. The following precedents are helpful in the consideration of this case: *Hopkinsville Milling Co.* v. *Gwin* (Ala.), 60 South. 270; *Art-Aseptible Furniture Co.* v. *Shannon* (Iowa), 140 N. W. 358; *Stock* v. *Snell,* 213 Mass. 449 (100 N. E. 830); *Globe Wernicke* v. *Deutser Furniture Co.* (Tex. Civ. App.), 155 S. W. 1007; *Nelson* v. *Hirschberg,* 70 Ark.

39 (66 S. W. 347).  There was much in the testimony
to the effect that the plaintiff's practice was not to
manufacture flour to fill an order like the one here in-
volved until it received shipping directions, but it also
appears that the brand of flour specified was one regu-
larly made by the plaintiff in the usual course of busi-
ness for indiscriminate sale to whomsoever would
purchase.  It is not like a transaction where the
article desired is for a special purpose and of no use
to either the maker or a stranger like a set of artificial
teeth for a certain person, or advertising matter for
a particular firm, or a party dress for a fashionable
society belle.  The flour in this instance is shown by
the testimony to be a staple article on the market, of
an established standard in quality, and an agreement
like the one in question having as its subject merchan-
dise of that kind, although it is yet to be manufactured,
under the circumstances disclosed by the testimony,
is still only an executory contract for the sale of per-
sonal property.  The conclusion is that whether we
consider the pleadings or the evidence the result is the
same, involving the measure of damages above indi-
cated.

Many other errors are assigned, but in the main
they depend either upon the question about the grade
of the flour which we have shown is irrelevant under
the pleadings, or upon the other question of the dam-
ages being affected by the decline in the price of
wheat; hence they will not be considered.

For the reasons indicated, the judgment is reversed
and the cause remanded for further proceedings.

REVERSED AND REMANDED.

Mr. Chief Justice McBride, Mr. Justice Moore and
Mr. Justice Ramsey concur.