[Civ. No. 15141. First Dist., Div. One. Sept. 24, 1952.]

McGUIRE & HESTER (a Corporation), Respondent, v. CITY AND COUNTY OF SAN FRANCISCO, Appellant.

Dion R. Holm, City Attorney, and A. Dal Thomson, Public Utilities Counsel, for Appellant.

Gardiner Johnson and John A. Sproul for Respondent.

BRAY, J.—Defendant appeals from a judgment awarding plaintiff $35,841.24 damages for breach of contract.

### QUESTIONS PRESENTED

1. Do the terms of the contract prohibit recovery of damages incurred by plaintiff solely due to defendant's failure to obtain rights of way as agreed?

2. Did plaintiff fail to comply with its legal duty to minimize damages?

3. Was interest on the amount of damages from date of completion of contract recoverable?

### GENERAL FACTS

The case was tried upon an agreed statement of facts. Plaintiff, a general engineering contractor, entered into an agreement with defendant to construct a water supply line from Baden to Colma. The contract required plaintiff to complete the work within 150 calendar days after the first Monday subsequent to the city's notification to plaintiff to commence work. Specifications for the work were expressly made a part of the contract.

Section 70 provided: "In addition to certain lands which are already owned by the City, the City will acquire the other necessary right of ways or easements for the required construction *prior* to the time the Contractor commences work in the field."* On May 13, 1948, defendant notified plaintiff

---

*Unless otherwise stated, emphasis is added by us.

to commence work on the following Monday. Plaintiff had actually commenced work prior to receiving said notice. Due to the failure of the city to procure some of the necessary rights of way until some time after the commencement of the project, thereby delaying its progress and complicating it because the work extended on through the bad weather months of 1948 and 1949, the work was not completed until 182 days after the expiration of the 150 day period. Plaintiff sued for the damage caused it by defendant's delay in procuring the rights of way and for the additional expense caused by the winter weather.

### 1. *Terms of the Contract.*

Defendant's main defense is that under the terms of the contract plaintiff's only remedy for defendant's delay in obtaining the requisite rights of way was to apply for and obtain an extension of time to complete the work. The portions of the sections of the specifications upon which it bases its contention follow.

Section 44 provided that should the completion of the work be delayed the commission might grant the contractor additional time for completion, and if the commission believed that such delay was *unavoidable,* as unavoidable was thereinafter defined, the commission would grant such time.

Section 45 defined *unavoidable* delays as including all delays beyond the control of the contractor which he could not have provided against by exercise of care, diligence, etc. Orders of the commission changing the amount of the work, the manner in which it was to be prosecuted, unforeseen delays on the part of other contractors, and delay in securing materials, equipment, etc., due to action of the War Production Board, would be considered unavoidable delays. Delays due to adverse weather conditions would not be considered unavoidable.

*Avoidable delays* (section 46) would include all delays which might have been avoided by the contractor exercising care, diligence, etc. Reasonable loss of time due to submitting plans to the engineer for approval, interruptions on account of reasonable interference of other contractors and other unavoidable delays which did not delay the completion of the whole work beyond the time specified, would not be considered *unavoidable* delays.

Section 47 provided that whenever the contractor foresaw any delay or when it occurred, he should notify the commis-

sion and the engineer so that the commission might prevent such delay or continuance, and determine whether it was avoidable or unavoidable. After completion, the engineer would assume that all delays which had not been called to the commission's attention at the time and not found unavoidable by the commission, were avoidable. The contractor agreed that he would make no claim that any delay not called to the attention of the commission and engineer at the time of its occurrence, had been unavoidable.

Section 48 provides that if the contractor requires an extension he shall file an application therefor in the form therein set forth not later than 20 days before the date of the expiration of the time fixed for the completion of the work.

Section 49 provides: "Apart from granting the Contractor extensions of time for unavoidable delays, *no payment* or allowance of any kind shall be made to the Contractor *by way of compensation or damages on account of any hindrance or delay from any cause* in the progress of the work or any portion thereof, *whether such delay be avoidable or unavoidable.*"

It will be noted that the definitions of "unavoidable" and "avoidable" delays in the contract refer primarily to delays by, or beyond the control of, the contractor and not of the defendant, except to orders issued by defendant's commission changing the amount of work to be done, the quality of material to be furnished or the manner in which the work is to be prosecuted, and to delays due to other contractors. Nowhere is there the slightest suggestion that defendant will be absolved from damages caused by its not keeping its agreement to secure rights of way prior to the starting of the work. To construe that language in section 49, which says, "no payment . . . shall be made to the Contractor" for "hindrance or delay from any cause . . . whether such delay be avoidable or unavoidable" to mean that it was thereby intended by the parties that the only remedy for the contractor, when the city broke its solemn agreement to procure rights of way in advance, was for the contractor to obtain an extension of time to do the work, would be to give the clause and the contract as a whole a strained, unreasonable and unfair interpretation. Particularly is this so, when it is remembered that the contract was drawn by defendant's attorney. Considerable portions of it are devoted to outlining what are avoidable and unavoidable delays and this type of delay is not included. Nor is there any provision for exten-

sion of time for *avoidable* delays. The delay here was avoidable. As said by the trial judge, Honorable Edward Molkenbuhr, in his excellent opinion: "It cannot be said that it was within the contemplation of the parties that the City would be permitted to delay the securing of right of ways for months, thereby causing plaintiff's expensive and heavy equipment to remain idle, finally causing them to complete the job under extreme adverse weather conditions, and then relegate it to an extension of time only. If the City had such an intention then the contract should have so provided in explicit, unambiguous language. It is a fundamental rule that stipulations against liability are not favored and are to be strictly construed; . . ."

The cases relied upon by defendant are readily distinguishable from the case at bar. In *Hansen* v. *Covell*, 218 Cal. 622 [24 P.2d 772, 89 A.L.R. 670], where the court held the exclusive remedy of the contractor for the delay caused by the acts of the owner was an extension of time in which he might complete the contract, the contract provided, "the time during which the contractor may be delayed by *the acts or neglect of the owner* . . . shall be added to the time of completion." (P. 627.) Again in *Christhilf* v. *Mayor & City Council*, 152 Md. 204 [136 A. 527], the contract expressly provided that for any delay due to the failure or inability of the city to obtain title to the land required, the contractor "shall be entitled to such an extension of time for the completion of the work as the engineer shall certify . . ." but "he shall have no claim or right of action against the city for damages or loss of profit for such delay . . ." (P. 528 [136A.].) Likewise, in *Manerud* v. *City of Eugene*, 62 Ore. 196 [124 P. 662], the contract provided that "The contractor shall not be entitled to damages on account of delay, but if such delay be *occasioned by the city the contractor* shall be *entitled to an extension of time* in which to complete the work . . ." (P. 665 [124 P.].) *Rogers* v. *United States*, 99 Ct.Cl. 393, is a case similar to the Manerud case. The specifications specifically provided that the government would not be responsible for any delay in furnishing rights of way, that where there was a possibility of delay the remedy was an extension of time.

Defendant relies greatly upon the fact that section 49 provides that no payment shall be made "by way of compensation or damages on account of any hindrance or delay *from any cause* . . ." In *Hill* v. *City of Duluth*, 57 Minn. 231 [58 N.W,

992], the contract had a provision which required the contractor, if he desired an extension of time, by reason of "any hindrance or delay from any cause whatever" to follow a certain procedure. In construing that language the court held that "The phrase 'from any cause whatever' must be held to refer to *any other cause than the act of the city.*" In *Milovich* v. *City of Los Angeles,* 42 Cal.App.2d 364 [108 P.2d 960], the time of completion of the contract was delayed by defendant's failure to furnish certain materials as agreed. In an action by plaintiff contractor for damages because of that delay, defendant claimed that extensions of time for the completion of the contract which plaintiff had obtained pursuant to the contract's terms were plaintiff's sole remedy. The court stated (p. 378) : "To uphold appellants' contention in this regard would be to give to the language of the contract a construction at variance with equitable principles and to clothe the appellant department with an unconscionable advantage over the contractor, by permitting the former to make amends for its contractual derelictions, delays and neglect by simple extending the time within which the contract could be completed regardless of the financial loss accruing to the contractor. This we cannot do in the absence of a plain, unequivocal intention on the part of the contracting parties, as evidenced by the language of the contract, to restrict the remedy of the contractor to that of obtaining an extension of time." While there was a provision in the contract to the effect that the provision for extensions of time did not exclude the recovery of damages for delay by either party under other provisions in the contract documents, the court in its decision did not rely upon this latter provision. The court distinguished the case from that of *Hansen* v. *Covell,* 218 Cal. 622, *supra* (cited by defendant here). The court further said (p. 377) : "It would outrage every semblance of justice, fairness and equity to assume" that the paragraph of the contract which provided for extensions of time for causes beyond the contractor's control foreclosed the contractor from recovering damage sustained by him because of the city's failure to furnish the materials as agreed. The quoted language would apply in this case, were we to hold that "delay from any cause" in section 49 included delay caused by the failure of the city to perform its agreement. "The government should be an example to its citizens, and by that is meant a good example and not a bad one." (*Cruise*

v. *City & County of San Francisco,* 101 Cal.App.2d 558, 565 [225 P.2d 988].)

While there were two phases of plaintiff's recovery, one for the period of standing by while the plaintiff did not have available to it the necessary right of way, and the other for the additional expense caused plaintiff by the winter weather, damages for both of which the court allowed, we can see no reason for denying recovery of damages for the second phase any more than for the first phase. Both were damages suffered by plaintiff because of defendant's neglect. Nor is it important whether such neglect was not caused by bad faith on the part of defendant.

## 2. *Duty to Minimize Damages.*

Approximately 90 days before what should have been the date of completion defendant stopped the work because it did not have the necessary rights of way to enable plaintiff to continue on. Defendant contends that because plaintiff did not then quit the job, declare the contract breached and sue for its damage, it failed to exercise its legal duty to minimize the damage, citing Restatement, Torts, section 918, and *Jegen* v. *Berger,* 77 Cal.App.2d 1 [174 P.2d 489], for the legal duty. The agreed statement shows that plaintiff was justified by the statements of defendant's engineer in anticipating momentarily that the necessary rights of way would be procured. Also it appears that plaintiff's equipment on occasions was moved from location to location, in some instances finding the right of way available but soon depleted, and in others finding none available; also that when it appeared that there would be considerable delay in getting the cemetery right of way, plaintiff moved most of its equipment to Oakland, leaving only such equipment as was necessary to do protective work upon the work which was then partially completed. The statement, too, justifies the court's finding, in effect, that plaintiff did not fail to minimize the damage. For its contention that plaintiff's only remedy for defendant's neglect was to declare the contract breached, defendant cites *City & County of San Francisco* v. *Transbay Const. Co.,* 134 F.2d 468, a case in which the work of the contractor was held up because of delays caused by the defendant city and county. Actually that case is authority to the contrary, for the court said (p. 472) : "Thus Transbay might have treated the contract as rescinded, ceased work thereunder, and sued for the value of labor and materials furnished to the date of the breach justifying the

rescission. But we agree with Transbay that this was not the only course it might take without waiver of its rights. It might, we think, elect to proceed with the contract, advising the city of its election and reserving its right to claim damages for the unjustifiable delays suffered at the hands of the city. That Transbay in fact elected to pursue the latter course is evidenced by its going ahead with the main project of raising the dam . . ." There plaintiff failed to file his claim under the contract in time and hence could not recover under the first count, and because he had elected to proceed with the contract, it was held he could not recover on the other counts which were based on *quantum meruit*. The court pointed out, under the authority of a number of cases there cited, that the contractor who is required to do additional work because of the city's acts (if not barred by failure to file his claim on time), may sue for the damage incurred.

3. *Interest.*

 The court allowed interest at 5 per cent on the amounts allowed as damages from April 30, 1949, which was the date of completion of the contract, to date of judgment, amounting to $5,087.77. This allowance of interest was apparently upon the authority of section 3287, Civil Code. However, as said in *Department of W. & P. v. Okonite-Callender C. Co.*, 181 F.2d 375, arising out of a breach of contract by the Department of Water and Power of the City of Los Angeles (p. 381) : "In the case of *Engebretson* v. *City of San Diego*, 185 Cal. 475, 197 P. 651, it was held that 'in order to recover interest against a municipality, there must be some statutory provision authorizing it.' California Civil Code, section 3287, which was in effect at the time this case was decided, provides generally that every person entitled to recover damages certain, or capable of being made certain by calculation, is entitled to recover interest. However, the California court in that case held that similar code sections providing generally for interest do not apply to the state or any of its subdivisions. The rule of the Engebretson case was followed in *Los Angeles Dredging Co.* v. *City of Long Beach*, 210 Cal. 348, 291 P. 839, 71 A.L.R. 161." (See, also, *Hopkins* v. *Contra Costa County*, 106 Cal. 566 [39 P. 933].) It was contended in the Okonite case that the cited cases dealt with contracts wherein the municipalities were acting in their governmental capacities, whereas the city of Los Angeles in that case was

operating its department of water and power in its proprietary capacity, and therefore section 3287 would apply. The court held that the distinction made no difference in the application of the rule.

We find nothing in *Irvine* v. *Reclamation Dist. No. 108,* 24 Cal.2d 468 [150 P.2d 428], which supports plaintiff's contention that, contrary to the holding in the Okonite case, section 3287 does apply to municipalities acting in their proprietary capacity. In view of the definite holding in the Okonite case, the decision in *Cranford Co.* v. *City of New York,* 38 F.2d 52, allowing interest against municipalities under a general New York statute is not applicable here. Here interest to date of judgment was improperly allowed. Of course, plaintiff is entitled to interest on the balance of the judgment from the date of entry.

As to the $5,087.77 interest, the judgment is reversed. In all other respects the judgment is affirmed. Plaintiff will recover costs.

Peters, P. J., and Wood (Fred B.), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 20, 1952. Schauer, J., was of the opinion that the petition should be granted.