[Civ. No. 6900. Fourth Dist. Jan. 10, 1963.]

L. S. HAWLEY, Plaintiff and Appellant, v. ORANGE COUNTY FLOOD CONTROL DISTRICT, Defendant and Respondent.

Monteleone, McCrory & Skjeie and David P. Yaffe for Plaintiff and Appellant.

George F. Holden, County Counsel, and Hayward P. LeCrone, Deputy County Counsel, for Defendant and Respondent.

SHEPARD, J.—This is an appeal by plaintiff from a judgment of nonsuit in an action for damages for alleged breach of contract.

## Facts

The facts come to us in an engrossed settled statement. Because it is succinct and terse, we quote it:

"Plaintiff contracted to construct a public improvement for defendant consisting of Huntington Beach Channel and a portion of Talbert Channel, in the County of Orange, State of California, in accordance with certain Plans and Specifications prepared by defendant. (Plaintiff's Exhibit 5). Item 15 of said contract required plaintiff to construct a sewer line and three (3) manholes.

"On or about June 24th, 1959, plaintiff began excavating a trench for said sewer line.

"Prior to the commencement of said excavation, defendant notified plaintiff that the wrong type of manhole had been designated on the Plans and instructed plaintiff not to install any of the manholes until revised Plans were issued.

"Plaintiff completed all of the excavation and laid all of the pipe for said sewer line by July 15th, 1959. From that date until September 10th, 1959, the sewer trench remained open.

"The new sewer line was to tie into an existing line at a point thirty (30) to forty (40) feet west of the west bank of the proposed flood control channel. One of the manholes which plaintiff was to construct was to be located at the point where the two lines were to intersect. Plaintiff's excavation between said manhole and the west bank of the channel was six (6) to eight (8) feet in depth. The water table in that area was above the bottom of the trench, and twelve (12) to fourteen (14) inches of ground water were present in the trench at all times between July 15th, 1959 and September 10th, 1959.

"On July 30th, 1959, plaintiff wrote to defendant, advising that the revised plan for the manholes had not yet been received and that allowing the trench to stand open for a long period of time created a dangerous condition. (Plaintiff's Exhibit 2).

"On August 4th, 1959, defendant sent plaintiff the revised plan for the manholes and requested plaintiff to submit a price for making the change. (Plaintiff's Exhibit 3). Plaintiff did not receive a copy of said revised plan at any time prior to August 5th, 1959.

"On August 5th, 1959, plaintiff wrote to respondent, submitting the price of One Thousand Sixty-five Dollars and Ninety Cents ($1,065.90) for installing the manholes according to the revised plan. (Plaintiff's Exhibit 4).

"On August 26th, 1959, defendant gave plaintiff written authorization to install said manholes. (Plaintiff's Exhibit 1).

"On several occasions between July 15th, 1959 and August 26th, 1959, plaintiff requested permission from defendant to backfill the sewer trench. Defendant refused to allow plaintiff to backfill any portion of the trench, except that part within the channel itself which had been encased in concrete, until the sewer line had been tested. The line could not be tested until the manholes were installed.

"Plaintiff commenced building the manholes on August 27th, 1959, and worked steadily until September 10th, 1959. By that date plaintiff had tied in the new line so that sewage was running through it, and was preparing to test the line.

"Before said line could be tested and said excavation backfilled, the banks of the sewer trench between the west bank of the flood control channel and the manhole caved in, knocking the sewer line out of place and causing it to part at the joints. Sewage flowed out of the line through the parted joints and flooded the trench.

"The cause of the cave-in was the gradual weakening of the banks of the trench which occurred as a natural result of allowing it to stand open for an unreasonable length of time considering the depth of the trench and the presence of ground water.

"According to custom and practice in the sewer construction industry one week would have been the normal time for defendant to have drawn and delivered to plaintiff the plans for the revised manholes.

"Plaintiff worked for thirteen (13) days with a crew of from five (5) to fifteen (15) men and various excavating and pumping equipment to repair the damage caused by the cave-in. The reasonable value of said work is the sum of Three Thousand Dollars ($3,000.00).

"At the conclusion of plaintiff's case, defendant filed with

the court a written Motion for Non-suit with Points and Authorities attached thereto, and defendant filed Points and Authorities in Opposition to the Motion. After listening to oral argument on behalf of both parties, the trial court declared that in its view the evidence adduced by plaintiff was sufficient to establish a prima facie case of breach of contract based upon the unreasonable delay by defendant in furnishing plaintiff with revised Plans and written authority to proceed with the work of constructing the modified manholes. The Court concluded however, that recovery of damages for said breach was precluded by that portion of Section 6-06 of the Specifications (Plaintiff's Exhibit 5) which reads as follows:

"'Furthermore, if the contractor suffers any delay caused by the failure of the District to furnish the necessary right-of-way or materials agreed to be furnished by it, or by failure to supply necessary plans or instructions concerning the work to be done after written request therefor has been made, the contractor shall be entitled to an extension of time equivalent to the time lost for any of the above-mentioned reasons, but shall not be entitled to any damages for such delay.'

"The trial court granted defendant's Motion on the sole ground that recovery of damages was precluded by the above portion of the Specifications. Judgment for defendant was entered on August 7th, 1961.

"On appeal, plaintiff intends to raise only the point that the portion of Section 6-06 of the Specifications above quoted does not prohibit the recovery of damages by plaintiff herein."

\* \* \*

Plaintiff contends that the trial court's judgment was error because (he contends) plaintiff proved a prima facie case of breach of contract; that the trial court so stated for the record; that a governmental agency cannot escape damages for breach of contract by using a provision that there shall be no damages for delay; that the damage suffered by plaintiff was not within the contemplation of the parties in their use of the "no damage" clause and that these results ensue for the additional reason that unless a forfeiture clause in a public contract is construed to preserve the fundamental right of the contractor to expect no unreasonable interference with his work such forfeiture clause is against public policy and void.

## Nonsuit

It is, of course, well settled that under our practice a motion for nonsuit is viewed in the same light as a demurrer

to the evidence. As was tersely stated in *Richardes* v. *Richardes*, 211 Cal. 392, 394 [1] [295 P. 816],

"A motion for a nonsuit is in effect a demurrer to the evidence and the court must assume that all the evidence received in favor of the plaintiff relevant to the issues is true. All presumptions, inferences and doubtful questions must be construed most favorably to the plaintiff's case. The rule is so well settled that it is not necessary to enlarge upon it."

See also *Hinds* v. *Wheadon*, 19 Cal.2d 458, 460 [1a] [121 P.2d 724]; *Leonard* v. *Watsonville Community Hosp.*, 47 Cal. 2d 509, 514 [3] [305 P.2d 36].

### Forfeiture Clause Strictly Construed

█ A clause which in ultimate result has the effect of imposing a forfeiture will be strictly construed, especially where the contract as here, was prepared by the one seeking to impose the forfeiture. (Civ. Code, § 1442; *Milovich* v. *City of Los Angeles*, 42 Cal.App.2d 364, 373 [4-5] [108 P.2d 960]; *Pacific Lbr. Co.* v. *Industrial Acc. Com.* 22 Cal.2d 410, 422 [9] [139 P.2d 892].) As was quoted in *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 771 [13] [128 P.2d 665]:

" 'Forfeitures are not favored by the courts, and if an agreement can be reasonably interpreted so as to avoid a forfeiture, it is the duty of the court to avoid it. The burden is upon the party claiming a forfeiture to show that such was the unmistakable intention of the instrument. [Citations.] "A contract is not to be construed to provide a forfeiture unless no other interpretation is reasonably possible." ' "

See also *O'Morrow* v. *Borad*, 27 Cal.2d 794, 800 [3] [167 P.2d 483, 163 A.L.R. 894]; *M. F. Kemper Constr. Co.* v. *City of Los Angeles*, 37 Cal.2d 696, 704-705 [13-14] [235 P.2d 7]; *McGuire & Hester* v. *City & County of San Francisco*, 113 Cal.App.2d 186, 191 [247 P.2d 934]; *Wagner* v. *Shapona*, 123 Cal.App.2d 451, 461 [10] [267 P.2d 378]. █ A contract between a governmental body and a private individual is ordinarily subject to the same rules of construction as between private individuals. (*Hensler* v. *City of Los Angeles*, 124 Cal.App.2d 71, 78 [3] [268 P.2d 12]; *Oberg* v. *City of Los Angeles*, 132 Cal.App.2d 151, 158 [1] [281 P.2d 591]. █ While the intention of the parties is derived initially from the language used in the written contract, "The words, phrases and sentences employed are to be construed in the

light of the expressed objectives and fundamental purposes of the parties to the agreement.'' (*Sawyer* v. *City of San Diego,* 138 Cal.App.2d 652, 661 [8] [292 P.2d 233].)

## DELAY CLAUSE

But defendant contends that in the delay clause in the case at bar the language of the clause is so unequivocal that the contractor must be deemed to have ''assumed the risk'' of prevention or hindrance by the contractee-owner, citing *Christhilf* v. *Mayor & City Council,* 152 Md. 204 [136 A. 527]; *Manerud* v. *City of Eugene,* 62 Ore. 196 [124 P. 662]; *Hansen* v. *Covell,* 218 Cal. 622 [24 P.2d 772, 89 A.L.R. 670]; and *Frank T. Hickey, Inc.* v. *Los Angeles Jewish Community Council,* 128 Cal.App.2d 676 [276 P.2d 52]. It is perfectly apparent from the opinion in the *Manerud* case that damages were awarded and affirmed. The appeal related to claimed insufficiency of amount. The holding was merely that certain damages were not proved and that delay alone was not sufficient on which to award damages. In the *Christhilf* case both parties were aware at the time the contract was entered into that the City did not have title to the right of way and might not be able to obtain it. It was perfectly apparent that this exact problem was within the contemplation of the parties in using ''failure or inability'' in obtaining the right of way. In the *Hansen* case our Supreme Court said, on page 627 [3], ''The obvious purpose of providing for the extension in the event of delays for the causes named is to prevent the operation of another clause in the contract which made the contractors liable to the owner at the rate of $25 per day for each day the completion of the building was delayed beyond the contract period.''

The contractors themselves applied for and received extensions of time for the very acts of delay for which damages were improperly awarded by the trial court. In the *Hickey* case there was involved higher wage rates and greater distance for dirt hauling. The appellate court held in effect that these were the kind of damages from delay that were within the legitimate purview of the waiver of damage for delay and estopped plaintiff from recovery of that portion of the claim. There is language in both the *Hansen* and the *Hickey* cases which, taken out of context, might lead one to conclude that no factual inquiry need be made as to the problems intended to be dealt with in any given ''delay damage waiver'' clause, but when read in toto we do not so understand them.

In *McGuire & Hester* v. *City & County of San Francisco, supra,* p. 189, the contract clause purported to deny damages to the contractor for delay, "whether such delay be avoidable or unavoidable." It was there contended that the contractors' sole remedy was time extension. Rejecting this contention, both the trial and appellate courts concluded that it was not within the contemplation of the parties that the city could cause a delay of 182 days, bringing the work into the bad weather months, causing extraordinary difficulties and expense not contemplated by the contract, and then relegate the contractor to a mere extension of time by way of compensation. In *Hensler* v. *City of Los Angeles, supra,* page 84, it was suggested (dicta) that a delay clause might have been used, in which event plaintiff could have recovered under the clause *only his actual expenses.* Such actual expenses are all the plaintiff was *here* claiming. In *Milovich* v. *City of Los Angeles, supra,* defendant again claimed extension of time as plaintiff's sole remedy because of a clause of a somewhat similar ultimate import to the one in the *Hensler* case and in the case here at bar. The court said of this defense, page 377, "It would outrage every semblance of justice, fairness and equity to assume that under the foregoing paragraph 11 respondent should be foreclosed from recovering damage sustained by him when through the failure of appellant department to furnish pipe from April 1st to May 24th respondent was compelled to keep his machinery on the ground in idleness."

*D. A. Parrish & Sons* v. *County Sanitation Dist.,* 174 Cal. App.2d 406, 414 [7] [344 P.2d 883] cites with approval the reasoning of the *Milovich* and *McGuire & Hester* cases in ruling that a "no damage for delay" clause did not cover delays amounting to a breach of contract. The *Parrish* case itself held that a requirement for 10-day notice on claims for extra work did not apply to claims for extra work caused by the public body's breach of contract through that body's errors in the layout of sewer line which in effect amounted to breach of contract, causing unconscionable delay through the necessity of laying out a new course.

In *De Riso Bros.* v. *State,* 161 Misc. 934 [293 N.Y.S. 436], a delay damage clause providing extension of time as the sole redress for act or neglect of the state was proposed as a defense bar for a damage claim. Such defense was rejected on the ground that the state had agreed to furnish temporary heat during construction and failure to furnish was a breach of contract compensable in damages. In *W. L. Waples Co.* v.

*State,* 178 App.Div. 357 [164 N.Y.S. 797], the defense, on a like delay damage clause, was held good for a "reasonable" delay with a dicta suggestion that it would not suffice for an "unreasonable" delay. Suspension of work caused by an impeachment trial was not within the contemplation of the parties and damages were allowed therefor. In *Seglin-Harrison Constr. Co.* v. *State,* 30 N.Y.S.2d 673, many items of claim for extra cost were allowed because the delay was unreasonable or amounted to active interference with the contractor. ▮ In *Wilson & English Constr. Co.* v. *New York Central R.R. Co.,* 240 App.Div. 479 [269 N.Y.S. 874], a delay damage clause like that in the case at bar was rejected as a defense to damage caused by defendant's delay, the court saying, at page 879, "A contract will not be so construed as to put one party at the mercy of the other" and ruling that the delay was not within the contemplation of the parties.

▮ Turning to Pennsylvania in *Sheehan* v. *City of Pittsburgh,* 213 Pa. 133 [62 A. 642], we find a damage delay clause similar to that here questioned rejected as a defense to a claim for damage due to the City's failure to obtain a right of way promptly, the court holding such delay not to have been within the contemplation of the parties. In Ohio, in *Nix, Inc.* v. *City of Columbus,* 111 Ohio App. 133 [171 N.E.2d 197], the court rejected a similar defense under similar circumstances as in the *Sheehan* case and quoted as follows from A.L.R., page 202 [of 171 N.E.2d],

" 'There seems to be no question but that the right of a building or construction contractor to recover damages resulting from the delay caused by default of the contractee may be precluded by the provisions of the contract. However, as the cases cited herein show, the courts have generally construed such provisions rather strictly.

" 'Whether the contract provisions do preclude the recovery of damages for delay caused by a default of the contractee depends on the terms of the particular contract provisions, the nature of the default, and the various other circumstances of the particular case.' "

In federal cases "unreasonable" delay in authorizing the contractor to start work (*Ross Engineering Co.* v. *United States,* 92 Ct.Cl. 253); "unreasonable" delay in deciding changes in specifications (*F. H. McGraw & Co.* v. *United States,* 130 F.Supp. 394; *William A. Smith Contracting Co. of Mo.* v. *United States,* 292 F.2d 847); delay in furnishing a borrow pit (*Ozark Dam Constructors* v. *United States,* 127

F.Supp. 187) ; delay in materials attributable to government negligence regarding railroad shipments over strike-threatened road, provide examples of rejection of similar delay damage clauses as furnishing absolute immunity.

 In the case at bar the engrossed statement states the damage resulted from the trench standing open an ''unreasonable'' length of time. The trial court orally found that plaintiff had established ''a prima facie case of breach of contract based upon the *unreasonable* delay by defendant in furnishing plaintiff with revised plans and written authority to proceed with the work of constructing the modified manholes.''

The trial judge evidently believed that the contract paragraph in controversy foreclosed him, as a matter of law, from weighing and considering all the factors here present for the purpose of determining whether the parties, in inserting said paragraph, contemplated the type of extra expense under the conditions here involved. We think he was not so foreclosed. The contract here involved contained a $50 per day clause for failure to complete within the time schedule of the contract. We cannot here say that the delay damage clause was ''obviously'' to avoid the operation of that penalty clause. However, it was one of the many factual matters, along with others we have already noted, which would have supported a factual conclusion that the parties did not, under the contract, contemplate refusal to reimburse the contractor for extra expense where, as here, the expense was caused by a combination of change of specification and unreasonable delay in refusing to allow work progress of back filling at a point where such progress was apparently the only way the contractor could effectively protect the work already done.

The question of whether or not the delay damage clause was intended by the parties to prevent recovery under the peculiar circumstances here involved resolves itself into a factual question requiring the weighing of all the facts presented. A judgment of nonsuit was not warranted. The cause should have been allowed to proceed to a judgment on the merits.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.