## Richmond

ALGERNON BLAIR, INC. V. NORFOLK REDEVELOPMENT AND HOUSING AUTHORITY.

May 4, 1959.

Record No. 4949.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*Jos. L. Kelly, Jr.* (*Williams, Cocke, Worrell & Kelly*, on brief), for the plaintiff in error.

*Edward R. Baird* (*Baird, Crenshaw & Lanning*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

In this appeal Algernon Blair, Inc., appellant, assigned as error the action of the trial court in sustaining the motion of Norfolk Re-

development and Housing Authority, an incorporated governmental agency, appellee, for summary judgment.

Appellant alleged in its motion for judgment, filed January 16, 1958, that it had entered into a contract, dated April 18, 1956, with appellee, wherein it was agreed that appellant would construct and furnish labor, materials, equipment and services in connection with a project known as Low Rent Public Housing Community No. VA-6-11 located in the City of Norfolk, Virginia, for a consideration of $2,625,982; that the contract called for its completion within 450 days, and provided for liquidated damages of $1 per dwelling unit per day for delay in completion. It was further alleged that on August 10, 1956, while the project was under construction, appellee issued a stop order until further direction on all work pertaining to and incidental to the heating plant and outside heating distribution systems, which order was complied with; that on September 14, 1956, after the expiration of 35 days, the stop order was rescinded and appellant promptly resumed construction of the project and completed full performance of the contract, and that the work stoppage caused it damages in the sum of $37,382.85. Appellant asked judgment for that amount with interest from August 10, 1956.

Appellee filed its answer on January 27, 1958 with an uncompleted, unexecuted copy of the contract which contained all provisions, except the drawings, attached as an exhibit. Paragraph 13b of the General Conditions in the contract was specifically referred to in the answer and it reads:

"No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable."

Also filed with the answer as exhibits was a copy of the stop order, dated August 10, 1956, and a copy of the rescission order, dated September 14, 1956. It was alleged that the stop order was issued because "doubt had arisen over the sufficiency and efficiency of the underground heating system designed for the project under construction." After a re-examination of the designed system and upon the advice of qualified consultants, appellee stated that it decided not to make any substantial changes in the designed system and cancelled the stop order. It admitted that appellant suffered some damage from the delay in construction.

On January 28, 1958, appellee filed a motion for summary judg-

ment on the pleadings, the ground for the motion being that under the exhibited contract between the litigants no cause of action exists for delay damages as sued for.

In response to this motion appellant filed on May 8, 1958 a motion to reject appellee's motion for summary judgment, and the grounds assigned for it follow:

"1. The contracting parties, in agreeing to the provisions of sub-paragraph d [b] of paragraph 13 of the General Conditions of their contract, did not contemplate a direct interference by Defendant with Plaintiff's performance of the work, in plain violation of the contract, such as was done by the issuance of the 'Stop Order' mentioned in Defendant's Answer. On the contrary both parties to the contract considered, at the time when the contract was made and for some time thereafter, that such a direct and positive act of interference by the defendant itself was not a 'hindrance or delay' within the meaning of said sub-paragraph. Thus the parties themselves have placed upon their contract a construction different from the construction on which Defendant now relies.

"2. Defendant's issuance on the 'Stop Order' was wholly unwarranted by and constituted a plain breach of the contract, the sole occasion for it being Defendant's inability to decide whether its own specifications were inherently faulty when written.

"3. Unless and until Defendant admits without qualification the truth of the allegations made above, a dispute exists as to material facts and Defendant's motion for summary judgment should be rejected."

After having considered and heard argument on the pleadings, the exhibits and the respective motions of the litigants, the court on May 18, 1958, over the objection of appellant, entered the order appealed from which provides:

"1. That no material fact is genuinely in dispute between the parties upon their respective motions herein except as to a factual allegation contained in plaintiff's motion, a determination of which is unnecessary but which may be taken as true for the purposes of this order;

"2. That plaintiff's motion to reject defendant's motion for summary judgment be, and it is hereby, denied and overruled;

"3. That defendant's motion for summary judgment on the pleadings be, and it is hereby sustained; and

"4. That the motion for judgment herein be, and it is hereby, dismissed, with costs to the defendant as taxed by the Clerk."

Rule of Court 3:20 reads:

"Either party may make a motion for summary judgment at any time after the parties are at issue. If it appears from the pleadings, the orders, if any, made at a pretrial conference, the admissions, if any, in the proceedings, or, upon sustaining a motion to strike the evidence, that the moving party is entitled to judgment, the court shall enter judgment in his favor. Summary judgment shall not be entered if the amount of damages or any other material fact is genuinely in dispute."

Appellant argues that paragraph 13b, *supra*, generally known as the "no damage clause", has been incorporated in construction contracts for years and that it has been construed by court decisions as not covering a situation where work stoppage is caused by the owner's direct interference with the contractor's work and that such exclusion was contemplated by the parties to the contract in the case at bar. Appellee takes the opposite view and contends that the "no damage clause" exonerates it from damages resulting from the delay due to the stop order.

In reference to a "no damage clause", the court said in *O'Connor v. Smith*, 84 Tex. 232, 238, 19 S. W. 168, 171: "* * * We do not think that the clause of the contract * * *, in regard to the delay, can be held to have application to the matters in controversy in this suit. The delay therein provided for is one that the railway company [owner] might suffer and not one that it should cause. * * *"

In 10 A. L. R. 2d Note, 801, at p. 805, it is stated:

"And the courts appear in accord that a provision in a construction contract relieving a contractee from liability for delays is not applicable to delays caused by conduct constituting active interference by the contractee. * * *"

Thus it can be argued that a literal interpretation should not be given the "no damage clause" (13b). It is also susceptible to appellee's interpretation. Therefore, we think an ambiguity exists as to coverage under the clause.

Appellant's written motion to reject appellee's motion for a summary judgment is a pleading. Rule of Court 3:18(a). In it we observe appellee charged that "both parties to the contract considered, at the time when the contract was made and for some time thereafter, that such a direct and positive act of interference by the defendant

itself was not a 'hindrance or delay' within the meaning of said subparagraph. Thus the parties themselves have placed upon their contract a construction different from the construction on which Defendant now relies." In *Camp* v. *Wilson*, 97 Va. 265, 269, 33 S. E. 591, Judge Keith said:

"* * * In a doubtful case, the construction placed upon a contract by the parties will be accepted by the court; and, while, in my judgment, with respect to this contract, there is no room for such an interpretation, yet it is enough for me to say that, whether or not the parties have themselves placed such a construction upon it, is a question of fact to be proved by the evidence like any other fact, and, if controverted, to be submitted to the jury upon proper instructions. * * *"

In the recent case of *L. O'Quinn, et al.* v. *P. Looney, et al.*, 194 Va. 548, 552, 74 S. E. 2d 157, Mr. Justice Buchanan, speaking for the court, stated:

"When the terms of an agreement are doubtful or uncertain, the interpretation placed thereon by the parties themselves is entitled to great weight and will be followed if that may be done without violating applicable legal principles. *Kiser* v. *Amal. Clothing · Workers*, 169 Va. 574, 591, 194 S. E. 727, 734; *First Nat. Bank* v. *Roanoke Oil Co.*, 169 Va. 99, 115, 192 S. E. 764, 771; 4 Mich. Jur., Contracts, § 47, p. 388."

Whether the litigants, as alleged by appellant, have construed the "no damage clause" in the contract since its execution to the effect that it did not embrace a situation where appellee by its own direct and positive act of interference caused a "hindrance or delay" is a question of fact to be determined by the jury. It is a material fact genuinely in dispute, and under Rule of Court 3:20 the right to summary judgment is precluded.

The judgment of the court below is reversed, and the case is remanded for a trial on its merits.

*Reversed and remanded.*