ACE STONE, INC., A CORPORATION, PLAINTIFF-APPEL-
LANT, v. THE TOWNSHIP OF WAYNE, ETC., DEFEND-
ANT-RESPONDENT.

Argued May 24, 1966—Decided July 6, 1966.

*Mr. Murray A. Laiks* argued the cause for appellant (*Messrs. Heller & Laiks,* attorneys).

*Mr. Irving I. Rubin* argued the cause for respondent.

The opinion of the court was delivered by

JACOBS, J. The Law Division granted the defendant's motion for summary judgment, the plaintiff appealed to the Appellate Division which affirmed (89 *N. J. Super.* 482 (1965)), and we granted certification on the plaintiff's application.

The defendant acknowledges that, for present purposes, the plaintiff's version of the situation, as supported by the facts set forth in its affidavit and the favorable inferences to be drawn therefrom, is to be accepted by us. See *Bilotti v. Accurate Forming Corp.,* 39 *N. J.* 184, 188 (1963); *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc.,* 31 *N. J.* 124, 135 (1959); *Shiddell v. Electro Rust-Proofing Corp.,* 34 *N. J. Super.* 278, 283 (*App. Div.* 1954), certif. denied 17 *N. J.* 408 (1955). On this approach, the following appears:

The defendant Township of Wayne advertised for bids on a sewer line project called "Pequannock and Upper Wayne Basins, Contract No. 2." The plaintiff Ace Stone, Inc., a general contractor, was the lowest responsible bidder. On July 26, 1961 the defendant's consulting engineer called the

plaintiff to a job meeting to explain the work to be performed under the contract which was to be signed by the parties in August 1961. The engineer requested that the plaintiff submit a schedule, pointing out that time was of importance to the municipality and that the contractor would be held to the 80-day completion date provided for in the specifications. He advised that the plaintiff start with separate crews with sufficient equipment to keep them busy at three separate beginning sites designated by him. He stated that there were no easement problems and that the plaintiff "could commence without any interruption since any easements which the Township required would have been completed and acquired" before the plaintiff received notice to proceed.

On August 1, 1961 the contract was signed and the plaintiff received notice to proceed. It organized its crews and equipment so as to start work at the three sites designated by the engineer and when it moved its equipment onto the sites it learned, for the first time, that it could start at only one of them because the Township had not acquired all of the necessary rights of way or easements. As a result, the plaintiff was unable to conduct its operations in an orderly, continuous and economic fashion, work stoppages ensued because of the lack of the easements, and the project had to be carried on through the winter months, being finally completed in June 1962. Throughout the progress of the work, the plaintiff complained about the unavailability of the sites and the resulting increased costs. It was told that upon completion, its claim for additional compensation would be reviewed but ultimately the claim was denied. This was followed by the filing of the plaintiff's complaint in the Law Division and the defendant's motion for summary judgment.

In granting the motion, the trial judge relied on the contract's "extension of time" clause and related clauses, and on the Appellate Division's holdings in *A. Kaplen & Son, Ltd. v. Housing Authority of City of Passaic,* 42 *N. J. Super.* 230 (*App. Div.* 1956), and *Gherardi v. Board of Education of City of Trenton,* 53 *N. J. Super.* 349 (*App. Div.* 1958).

The extension of time clause provided that the Owner (Township) would have the right to defer the beginning or suspend the whole or part of the work whenever the engineer considered it necessary or expedient to do so, and that if the contractor was delayed in the completion of the work by any act or neglect of the Township or the engineer, or by strikes, lockouts, etc., or by any cause beyond the contractor's control, or by any cause which in the opinion of the engineer justified the delay, then the contractor would be allowed additional time to complete its work. The concluding sentence directed that "No claim for damages or any claim other than for an extension of time as herein provided shall be made or asserted against the Owner by reason of the delays hereinbefore mentioned."

This type of exculpatory clause appears in varying phraseology in many reported cases throughout the country. It is often referred to as a "no-damage" clause and though it is generally construed strictly against its draftsman (*cf. Terminal Const. Corp. v. Bergen County, etc., Dist. Authority,* 18 *N. J.* 294, 302 (1955)) and special exceptions are often read into it, its underlying legality is acknowledged. See *A. Kaplen & Son, Ltd. v. Housing Authority of Passaic, supra,* 42 *N. J. Super.,* at *pp.* 233–235; 13 *Am. Jur. 2d, Building and Construction Contracts* § 52, at 55 (1964); Annot., "Validity, construction and application of no damage clause with respect to delay in construction contract," 10 *A. L. R. 2d* 801 (1950).

In *Kaplen,* the Appellate Division referred to several special exceptions which, on the record now before us, may fairly be said to have no pertinence here; thus it cited instances where the clause was held inapplicable because the delay was caused by the "active interference or bad faith of the public agency" (*American Bridge Co. v. State of New York,* 245 *App. Div.* 535, 283 *N. Y. S.* 577 (*App. Div.* 1935)) or because the delay by the public agency was so extensive as to be deemed "an abandonment of the project" (*People ex rel. Wells & Newton Co. of New York v. Craig,* 232 *N. Y.* 125,

133 *N. E.* 419 (1921)). It also cited *Sheehan v. City of Pittsburg*, 213 *Pa.* 133, 62 *A.* 642 (1905), where the particular delay by the public body was found to be "a kind not contemplated by the parties." 42 *N. J. Super.*, at *p.* 234. The line of cases represented by *Sheehan* may well have pertinence here for it includes instances where the exculpatory clause was construed to be inapplicable to a situation where the contractor proceeded pursuant to the public agency's direction but found that the site was not available to him because of the agency's failure to have the necessary right of way or easement. See *Gasparini Excavating Co. v. Pennsylvania Turnpike Comm'n.*, 409 *Pa.* 465, 187 *A.* 2d 157 (1963); *Nix, Inc. v. City of Columbus*, 111 *Ohio App.* 133, 171 *N. E.* 2d 197 (1959); *McGuire & Hester v. City and County of San Francisco*, 113 *Cal. App.* 2d 186, 247 *P.* 2d 934 (*D. Ct. App.* 1952); *Pitt Constr. Co. v. City of Dayton*, 237 *F.* 305 (6 *Cir.* 1916); *cf. County Excavation, Inc. v. State*, 44 *Misc.* 2d 1057, 255 *N. Y. S.* 2d 708, 711 (*Ct. Cl.* 1964); *City of Dallas v. Shortall*, 87 *S. W.* 2d 844, 850 (*Tex. Civ. App.* 1935), rev'd 131 *Tex.* 368, 114 *S. W.* 2d 536, 544 (1938).

In *Sheehan* the city entered into a contract with Howley (later assigned to Sheehan) for the construction of a street. The parties assumed that the city had acquired the necessary right of way but this was not so. By reason of the ensuing delay, Sheehan suffered a loss and sued the city which defended under a no-damage clause. In holding it inapplicable, the Pennsylvania Supreme Court pointed out that, notwithstanding the breadth of the clause, it was clear that "the delay from the city's failure to obtain complete right of way was not in the class of difficulties and delays which were in the minds of the parties." 62 *A.*, at *p.* 642. In *Gasparini, supra, Sheehan* was applied to a case where the contractor, after receiving notice to proceed, arrived with its equipment but was delayed because the site was occupied by another contractor for slushing operations. The Pennsylvania Supreme Court held that, in view of its direction to the contractor to proceed, the public agency could not rely on a

provision in the contract that "[n]o claims for damages or extra costs due to delay to the Contractor's work caused by the work of slushing contracts will be allowed and it is hereby agreed that the contract prices are submitted on this basis." 187 *A. 2d*, at *pp.* 159, 161.

In *Pitt Constr. Co. v. City of Dayton, supra,* the city entered into a contract with the plaintiff for an extension and improvement of its waterworks system. Under the contract, the city covenanted that it would furnish the right of way for the improvement but failed to do so seasonably, resulting in loss to the plaintiff who sued for damages. The city defended under a clause which provided that the contract price would cover all loss arising out of the nature of the work or "from any unforeseen obstructions or difficulties encountered in the prosecution of the work, and for all risks of any description connected with the work, and for all expenses incurred by, or in consequence of, the suspension or discontinuance of the work as herein specified." In holding that the clause was inapplicable, the court cited *Sheehan* and other cases, and concluded with the following remarks:

"We appreciate the reason why public corporations employ elaborate provisions in their improvement contracts to guard their interests against unjust claims; familiar experience proves that they need such protection. This has resulted in the development of a wide range of contractual provisions looking to the protection of the public interests; indeed, a similar development has, in large measure, reached the domain of private contracts. It is equally well known that these provisions are aimed generally against the contractor and with a view of limiting the cost of an improvement to the sum agreed upon and such additional sums as are specially provided for. Still we are not aware of any sound rule or policy that would permit an employer to use such general provisions of a contract as are here found, to shield himself against damages inflicted by his own breach of a covenant made by him and of as vital a character as the present one. Assuming that he may legally do so, if an employer wishes to protect himself against his own failure to keep such covenants, he must distinctly say so; and he must advise the contractor of this purpose through specific provision set out in the contract. Roberts v. Bury Commissioners, supra, at page 327. This has not been done here; and in view of the obvious fairness of expressly declaring such a purpose and of the rule of judicial decision before pointed out, we must hold that the contract does not apply to the damages claimed." 237 *F.*, at *pp.* 313–314.

In *McGuire & Hesler v. City and County of San Francisco,* *supra,* the plaintiff entered into an agreement with the defendant to construct a water supply line. The contract had a 150-day completion provision and set forth that the defendant would acquire the necessary rights of way or easements before the contractor commenced work in the field. The defendant notified the plaintiff to commence work but, because of the defendant's failure to procure some of the needed rights of way, the work was delayed and had to be continued through the winter months. It was not completed until sometime after the expiration of the 150-day period and the plaintiff sued to recover the additional expenses incurred by it. The defendant relied on a clause which provided that "[a]part from granting the Contractor extensions of time for unavoidable delays, no payment or allowance of any kind shall be made to the Contractor by way of compensation or damages on account of any hindrance or delay from any cause in the progress of the work or any portion thereof, whether such delay be avoidable or unavoidable." In holding that this clause was inapplicable, the court cited with full approval the following remarks of the trial judge:

"It cannot be said that it was within the contemplation of the parties that the City would be permitted to delay the securing of right of ways for months, thereby causing plaintiff's expensive and heavy equipment to remain idle, finally causing them to complete the job under extreme adverse weather conditions, and then relegate it to an extension of time only. If the City had such an intention then the contract should have so provided in explicit, unambiguous language. It is a fundamental rule that stipulations against liability are not favored and are to be strictly construed." 247 P. 2d, at *pp.* 936–937.

See *Hawley v. Orange County Flood Control District,* 211 *Cal. App.* 2d 708, 27 *Cal. Rptr.* 478 (*D. Ct. App.* 1963); *D. A. Parrish & Sons v. County Sanitation Dist. No. 4,* 174 *Cal. App.* 2d 406, 344 *P.* 2d 883 (*D. Ct. App.* 1959); *cf. Nix, Inc. v. City of Columbus, supra,* 171 *N. E.* 2d, at *pp.* 204–205.

█ Where parties enter into a construction contract with a customary no-damage clause they clearly contemplate, as Judge Goldmann pointed out in *Gherardi, supra,* that the

438

contractor himself will bear the risks of the "ordinary and usual types of delay" incident to the progress and completion of the work. 53 *N. J. Super.*, at *p*. 365. And provisions in any given contract may disclose with clarity that the parties contemplate that the contractor will even bear the risks incident to highly crucial delays such as those resulting from the public agency's failure to have the site ready. Thus in *Christhilf v. Mayor and City Council of Baltimore,* 152 *Md.* 204, 136 *A*. 527 (1927), the contract expressly provided that if the contractor was delayed "because of the failure or inability of the city to obtain title to or possession of any land," he would be entitled to an extension of time but not damages. Similarly in *Kaplen,* the contract expressly provided that, if the site was not "released to the Contractor within the time specified," there would be an extension of time but not damages. 42 *N. J. Super.*, at *p*. 232.

In the contract before us there were no express provisions comparable to those in *Christhilf* and *Kaplen.* The extension of time clause contained no specific reference to any inability on the part of the Township to obtain necessary rights of way and the no-damage provision itself seems primarily pointed toward any delays which might occur after the work had begun, rather than toward any delays on the Township's part in fulfilling its implied obligation to make the necessary sites seasonably available for the commencement of work. At oral argument there was a suggestion that parol evidence, including the practices and customs in the trade, may well shed light as to whether or not the parties actually contemplated, by the no-damage clause, the barring of claims not only for ordinary delays in the course of construction, but also for delays resulting from the failure seasonably to provide rights of way. But unfortunately the matter was disposed of on summary judgment and no such evidence is in the record before us. *Cf. Hawley v. Orange County Flood Control District, supra,* 211 *Cal. App.* 2d 708, 27 *Cal. Rptr.* 478; *Algernon Blair, Inc. v. Norfolk Redevelop. & Hous. Auth.,* 200 *Va.* 815, 108 *S. E.* 2d 259 (1959).

In both *Algernon* and *Hawley* the appellate courts reversed summary judgments to enable full trial as to the contemplation of the parties. In *Algernon* the Virginia Supreme Court of Appeals held that, under the showing before it, the jury should be permitted to determine whether the practical construction placed by the litigants on the no-damage clause embraced a situation where the public agency had issued a stop order pending further directions from it. 108 *S. E. 2d,* at *p.* 263. In *Hawley,* the plaintiff sought to hold a public agency accountable for damages resulting from its unreasonable delay in furnishing him with revised plans necessary for constructing certain manholes. The trial judge granted a non-suit at the end of the plaintiff's case because of an exculpatory clause in the contract; in reversing, the California District Court of Appeal stated that "[t]he question of whether or not the delay damage clause was intended by the parties to prevent recovery under the peculiar circumstances here involved resolves itself into a factual question requiring the weighing of all the facts presented." 27 *Cal. Rptr.,* at *p.* 484.

■■ In its opinion in the instant matter, the Appellate Division concluded that although *Kaplen* (42 *N. J. Super.* 230) was distinguishable and although the issue was not "entirely free from doubt," summary judgment was nonetheless proper. We differ with that ruling and consider that the matter should have gone to trial. See *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., supra,* 31 *N. J.,* at *pp.* 132–33. The admitted goal is to ascertain and effectuate the contemplation or common intention of the parties. See *Tessmar v. Grosner,* 23 *N. J.* 193, 201 (1957). Towards that goal, formal interpretative rules are readily subordinated and parol evidence of the attendant circumstances including trade practices and customs is clearly admissible. See *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., supra,* 31 *N. J.,* at *p.* 133; *Atlantic Northern Airlines, Inc. v. Schwimmer,* 12 *N. J.* 293, 301 (1953); *American Mercury Ins. Co. v. Bifulco,* 74 *N. J. Super.* 191, 196 (*App. Div.*), affirmed 38

N. J. 530 (1962); see also 5 *Williston, Contracts* § 648 *et seq.* (3d ed. 1961); 3 *Corbin, Contracts* § 532 *et seq.* (1960).

It appears to us that the just course now is to remand the proceeding to the Law Division to enable the parties to introduce such oral and documentary evidence as may be available and relevant in aid of interpretation. After all of the evidence is in, determination may fairly be made as to whether the language used in the contract by the parties, when considered in the full light of their relations and objectives, and the attendant circumstances, contemplated that the extension of time clause and the related clauses would preclude the plaintiff from asserting a claim for damages under the particular circumstances presented. The respective functions of the court and jury in connection with such determination have been fully set forth in the cases and in the secondary authorities and need not be restated here. See *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., supra,* 31 *N. J.,* at *p.* 133; *Deerhurst Estates v. Meadow Homes, Inc.,* 64 *N. J. Super.* 134, 152–53 (*App. Div.* 1960), certif. denied 34 *N. J.* 66 (1961); see also 4 *Williston, Contracts, supra,* § 616; 3 *Corbin, Contracts, supra,* § 554.

Reversed and remanded.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.