# CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Betty P. Cauthorne,
Executrix of the Estate of
Ercell C. Keffer,
Deceased

v.

First National Bank of Maryland

v.

First American Bank of Virginia
and J. Stephen Buis,
Administrator of the Estate of
David Murray, Sr.,
Deceased

July 21, 1995

BY JUDGE VERBENA M. ASKEW

In 1992 Plaintiff Betty Cauthorne filed suit[1] initially against First National Bank of Maryland ("FNBM") which impleaded First American Bank of Virginia ("FABV") and J. Steven Buis, Administrator of the Estate of David Murray, for breach of warranty under § 8.4-207. FABV then filed a cross-claim against Buis on the same theory.

FABV and FNBM both filed Motions for Summary Judgment. Judge Stephens denied summary judgment, as a material fact respecting the existence of an imposter remained in dispute. FNBM filed a Motion to Reconsider the decision, which was denied.

---

[1] The Plaintiff received leave to amend her initial pleading as she had failed to plead that demand had been made and payment denied.

Then, in 1994, Plaintiff was granted leave to amend her Amended Motion for Judgment to include Legg Mason Wood Walker, Inc., and Helen Anne Derby, a corporation and its agent, respectively. This cause of action alleges conversion but also includes allegations of negligence and breach of oral or written contract.

In 1995 Legg Mason, Derby, FABV, and FNBM filed Motions for Summary Judgment. In addition, Legg Mason has filed a Motion to Sever Trials.

## Statement of Facts

This suit arises from the sale of Central Fidelity Bank stock ("Stock") by Legg Mason and its agent, Derby. Cauthorne is the Executrix of the Estate of Ercell C. Keffer and has alleged that the above institutions and David Murray converted, under § 8.3-419, two checks which were endorsed "Deposit to David M. Murray — Trust Account, Ercell C. Keffer, by Betty P. Cauthorne, her Attorney-in-Fact." At the time of the stock sale, Cauthorne had a broad Power of Attorney, including the powers to purchase and sell stocks and bonds.

Pursuant to this Power of Attorney, Cauthorne executed each of the stock certificates on behalf of Keffer. She delivered the stock to Murray who then established an account with Legg Mason and deposited the stock in the name of Plaintiff. At some time in May of 1991, Murray ordered the sale of the stock, telling Legg Mason he was authorized to make this sale order.

The Defendant Banks maintain that they must be held harmless because an imposter induced Legg Mason to issue the checks and deliver them to Murray. Specifically, the Banks rely on Derby's response to a Request for Admission that she (a) took the order for the sale of the stock, (b) spoke by telephone with a woman who identified herself to Derby as Cauthorne, and (c) would not have sold the stock were it not for the authorization she received from the woman Derby believed to be Cauthorne.

These checks, issued by Legg Mason, were deposited into Murray's trust account maintained with FABV which then negotiated the checks to FNBM, where Legg Mason maintained the account on which the checks were drawn. FNBM honored the checks as presented. The checks, however, were signed by neither Cauthorne nor Keffer, nor was any other party authorized to endorse the checks. The proceeds from these checks were never received by the Plaintiff.

*Issues*

1. Whether FNBM and FABV are entitled to summary judgment under the imposter rule, codified in § 8.3-405?
2. Whether Legg Mason's Motion to Sever Trials should be granted?

*Analysis*

1. *Summary Judgment Standard*

A court may grant summary judgment only "if it appears from the pleadings [or] the admissions . . . that the moving party is entitled to judgment;" summary judgment should not be "entered if any material fact is in dispute." Rule of the Supreme Court of Virginia 3:18. Thus, where the parties disagree on the facts, the right to summary judgment is precluded. *Blair, Inc. v. Norfolk Redevelopment & Housing Auth.*, 200 Va. 815 (1959).

2. *Imposter Rule*

The general rule of the U.C.C. is to impose liability on the party which dealt with a wrongdoer, most commonly the party that took the instrument from the wrongdoer. However, the imposter rule creates an exception and makes a forged endorsement effective as to the party who takes from the forger, in this case, FABV. Specifically, Virginia Code § 8.3-405 states that:

> an endorsement by any person in the name of a named payee is effective if (a) an imposter[2] by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee.[3]

Thus, while the section does not explicitly place liability on a drawer, it does "render a forged endorsement 'effective,' thereby precluding liability of a collecting bank"; i.e., because the signature warranty of § 8.4-207 is not breached by the transferor, the loss is shifted away from the depository

---

[2] Under this section, an imposter is said to "refer to impersonation and does not extend to a false representation that the party is the authorized agent of the payee." *Official Comment*, ¶ 2.

[3] Defendant Banks at some point argued that subsection (c) also applies. However, that section is directed at what are commonly known as "padded payroll" cases; the subsection states that "an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest."

bank, in this case FABV. *Girard Bank v. Mount Holly State Bank*, 474 F. Supp. 1225, 1231 (D. N.J. 1979).

The Banks[4] argue that there are "no material facts genuinely in dispute with respect to the factual matters necessary to bring this case squarely within application of the imposter rule of Va. Code § 8.3-405(1)(a)." FABV Brief at 4. FABV relies on Derby's admission regarding the imposter and Plaintiff's lack of independent knowledge to support this claim. In short, the Banks maintain that there cannot be a dispute "on this issue since Derby is the only person on earth who can testify factually to the event." FABV's Motion at ¶ 12.

Plaintiff disagrees, first noting that FABV heavily relies on the Request for Admission of Derby. However, that admission is neither binding[5] on Plaintiff nor conclusive as reasonable men could differ, finding Derby's testimony incredible.

In addition, Plaintiff contends that a dispute remains as to who or what induced Legg Mason to issue the checks. In the initial summary judgment arguments, Plaintiff attacked Murray's standing as an imposter under Code § 8.3-405(a), arguing that there never was an imposter because Murray never pretended to be someone other than himself; he simply represented that he was the attorney for the Plaintiff with the authority to act. Given Derby's testimony regarding the phone call with a woman who identified herself as Cauthorne, however, this argument may no longer be sufficient. Hence, Plaintiff's second argument: it is for the jury to determine whether it was an imposter or merely David Murray that was the real inducement to issue the checks. Under Plaintiff's theory, Derby and Murray's long-

---

[4] FNBM relies heavily on FABV's brief. The only difference between the two Banks' liability concerns their status relevant to each other, as drawee and depository banks, on the cross-claim based on presentment warranties under § 8.4-207. With regard to Plaintiff, and the imposter rule, their liability is identical.

[5] There is nothing in Rule 4:11 addressing the impact of an admission on another party; however, logic and fairness suggest that one party's admission cannot be used against another. The rule merely states that "any matter under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission." Virginia Supreme Court Rule 4:11(b). The rule continues by limiting the impact to "the pending action only and is not an admission by him for any other purpose, nor may it be used against him in any other proceeding." *Id.*

standing business relationship caused the checks to be issued, not some imposter on the phone.[6]

Defendants cite several cases discussing the imposter rule and equating them to the case at hand. However, determining whether summary judgment should be granted in this case depends not so much on the law of imposters but whether or not there is a genuine factual dispute about the effect of the imposter. Clearly, Plaintiff is in a difficult situation. Derby, the only person who can testify factually, has stated that there was an imposter; thus, the only way Plaintiff can prove that there was not an imposter is to prove a negative. For this reason, Defendant Banks contend that summary judgment is warranted because Plaintiff "cannot in good faith state, let alone prove, that there was not an imposter." Brief at ¶ 8.

Plaintiff, however, does not have to prove or disprove the existence of an imposter. Rather, her argument is not whether or not there was an imposter, but whether the imposter was the inducement for issuing the check; if Plaintiff is correct and the check was issued based solely on Derby and Murray's relationship, the existence of an imposter is no longer at issue; Virginia Code § 8.3-405(1)(a) only applies where "an imposter . . . *has induced* the maker or drawer." (Emphasis added.) Under Plaintiff's interpretation of the evidence, specifically emphasizing the relationship between Derby and Murray, it is a jury question as to what caused Legg Mason to issue the check; in other words, there is a factual dispute as to the source of "inducement" under Code § 8.3-405(a).

In conclusion, it appears that the Banks have a very strong case for the imposter defense. However, there does remain an issue of fact, not as to the existence of the imposter *per se*, but the degree of influence, if any, the imposter had on the decision to issue the checks. While Derby's admission is strong evidence that the imposter not only existed but also induced the sale, it cannot be said to bind the Plaintiff. Thus, while a trier of fact may likely find for the Banks on this defense given Derby's statement regarding the imposter, Plaintiff should not be denied her opportunity to prove that it was Derby's relationship with Murray and his representation, and

---

[6] In her response to the motions for summary judgment, Plaintiff did not identify specifically any facts at issue. However, from the tone and argument, it is clear that Plaintiff disputes Derby's admission. In addition, past arguments make clear that Plaintiff intends to introduce evidence about the Murray/Derby relationship that would suggest an alternate inducement for Derby, and thus Legg Mason, to issue the checks.

not some alleged imposter, that caused the checks to be issued. For these reasons, the Motions for Summary Judgment are denied.

### 3. *Motion to Sever Trials*

Legg Mason moved to sever its trial from the remaining defendants and third-party defendants. FABV has objected on several grounds. First, FABV asserts that this trial was set on a December 13, 1994, praecipe wherein representatives of all parties were present; FABV contends that it is untimely for Legg Mason to file this motion two weeks prior to the commencement of the trial. Second, FABV asserts that judicial economy requires that these trials should be heard together. Specifically, the same facts and legal issues are involved in every case. Moreover, if the motion is granted, FABV claims that it will have to try the case twice, as there is an issue of shifting liability from FABV to Legg Mason, thus raising a likelihood of inconsistent verdicts.

There are two provisions governing the severance of civil trials. The first falls under the Virginia Rules of the Supreme Court concerning third-party practice; Rule 3:10 states that "any party may move to strike the third party motion for judgment, or for its severance or separate trial." Second, Virginia Code § 8.01-281 allows "the court, upon motion of any party, [to] order a separate trial of any claim, counterclaim, cross-claim, or third-party claim, and of any separate issue or of any number of such claims."

Unfortunately, there are no cases discussing either the rule or the Code section. Such a decision is within the sound discretion of the trial judge. While there are no appellate decisions on point,[7] such a ruling could be said to be analogous to other procedural determinations like continuances and venue, which the Supreme Court has consistently upheld as being within the trial court's discretion. See, *Norfolk & W. Ry. v. Williams*, 239 Va. 390 (1990); *Autry v. Bryan*, 224 Va. 451 (1982). Furthermore, as a practical matter, FABV would appear to be correct that judicial economy favors a joint trial. For these reasons, the Motion to Sever Trials is denied.

---

[7] The Supreme Court has held in the criminal context that a decision to sever defendants was within the discretion of the trial judge. *Jones v. Commonwealth*, LEXIS 131 (Va. App. 1994). However, it must be noted that in the criminal severance issues, there are several findings that a trial judge must make in order to sustain a joint trial. See, Virginia Code § 19.2-262.1.