**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DENNIS STUBBS PLUMBING,
INCORPORATED,

*Plaintiff-Appellant,*

v.

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

*Defendant-Appellee.*

⎫
⎪
⎪
⎬
⎪
⎪
⎭

No. 02-2050

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-02-381-A)

Argued: May 8, 2003

Decided: June 5, 2003

Before LUTTIG and MICHAEL, Circuit Judges, and
Joseph Robert GOODWIN, United States District Judge
for the Southern District of West Virginia,
sitting by designation.

Vacated and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** William H. Moore, ITTIG & ITTIG, P.C., Washington,
D.C., for Appellant. Tamara Marie McNulty, VENABLE, BAETJER
& HOWARD, L.L.P., Vienna, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

The plaintiff in this matter, Dennis Stubbs Plumbing, Inc. ("Stubbs"), appeals from the dismissal of its claim below. The district court concluded that Stubbs' claim did not satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332, and dismissed Stubbs' case without prejudice. Because we conclude that Stubbs may in fact have claims exceeding the $75,000 amount-in-controversy requirement, we vacate the district court's decision and remand for further proceedings.

I.

This action arises out of a failed construction project. MDC Builders, LLC ("MDC") was the prime contractor for a public construction contract with the Northern Virginia Community College System ("NVCC"). NVCC contracted with MDC for the construction of a new classroom building (the "Project"). In accordance with the requirements of Virginia law, MDC, as principal, and Travelers Casualty and Surety Company of America ("Travelers"), as surety, issued a payment bond for the protection of those supplying labor and materials on the project.

MDC subcontracted with Stubbs to furnish all labor, materials, equipment, supervision, and services for the plumbing work for the subcontract price of $210,000 (the "Subcontract"). The Subcontract contained what is generally referred to as a "no damages for delay" clause. This clause provided, in relevant part:

> ***EXTENSIONS OF TIME*** — If Subcontractor shall be materially delayed by the wrongful act or omission of the Contractor, the time for completion of the Work shall be extended for a period equal to the reasonably estimated

period of delay as determined by Contractor. . . . The extension of time herein provided shall be Subcontractor's sole and exclusive remedy for any delay, and Subcontractor shall have no claim for damages against Contractor by reason thereof.

J.A. 32. The provision for delay reflected some prescience on the part of the contracting parties, for numerous delays ensued in the course of construction. Ultimately, MDC's contract was default terminated by Virginia for gross mismanagement of the Project.

Stubbs brought suit against Travelers in federal district court in an effort to recover $153,064.83 in damages incurred in its performance of the Subcontract. Stubbs itemized its damages as follows:

| Item #1 | Contract Balance & Retainage | $14,910 |
| Item #2 | Additional & Extended Field Supervision | $10,799.25 |
| Item #3 | Additional Labor Costs Due to Interferences, Poor Scheduling, Acceleration & Disruptions | $88,799.29 |
| Item #4 | Extended Home Office Overhead | $38,556.29 |

S.J.A. 4-5 (hereinafter "Itemized Damages"). Travelers, Stubbs alleged, was liable for these damages because it had failed to make payment pursuant to the payment bond. Stubbs also alleged that the district court had diversity jurisdiction over the action as the parties were diverse and the amount in controversy exceeded $75,000.

Travelers filed a Motion for Partial Summary Judgment based upon the "no damages for delay" clause. In response to that motion, Stubbs introduced an affidavit by Dennis Stubbs, the president of Stubbs Plumbing, which stated, among other things, that "MDC ordered Stubbs to perform work in areas that were not ready for installation of plumbing work," and that "Stubbs incurred additional costs and damages as a direct result of MDC's gross mismanagement of the Project and its active interference with Stubbs' work." J.A. 73.

The district court granted Travelers' motion, holding that the "no damages for delay" clause prohibited Stubbs from recovering damages due to delays, including those delays caused by MDC. The district court construed Itemized Damages 2-4 as delay damages. Since such damages were not recoverable under the contract, and since the remaining amount in controversy was only $14,910 for "Contract Balance & Retainage," the district court concluded that it lacked subject matter jurisdiction over the case and dismissed it without prejudice. From that ruling, Stubbs appeals.

II.

We review the district court's grant of summary judgment *de novo*. *See Bass* v. *E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 766 (4th Cir. 2003). In doing so, we view the facts proffered in the light most favorable to the non-moving party — in this case Stubbs — and determine whether such proffer is sufficient to create a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c).

The issue presented is whether the "no damages for delay" clause prohibits Stubbs from recovering the types of damages asserted in Itemized Damages 2-4. Once again, the relevant language from the Subcontract provides that "[t]he extension of time herein provided shall be Subcontractor's sole and exclusive remedy for any delay, and Subcontractor shall have no claim for damages against Contractor by reason thereof." J.A. 32. By stating that extension of time shall be the sole and exclusive remedy "for any delay," the Subcontract makes clear that delay damages resulting from a material delay by MDC are not recoverable.

Stubbs claims, however, that the types of damages listed in Itemized Damages 2-4 are not delay damages. The Stubbs affidavit avers that "Stubbs incurred additional costs and damages as a direct result of MDC's gross mismanagement of the Project and its active interference with Stubbs' work." J.A. 73. As stated in Stubbs' brief, "Stubbs' claims for damages include excess labor and material and supervision costs relating to the increased difficulty of performing its work and the additional time it took to complete." Appellant Br. at 6. The latter type of damage — additional time necessary for completion — might amount simply to delay damages, but the former type of damage —

increased difficulty in performing its work — is not itself necessarily a request for damages resulting from delay. Claims of the former type of damage, which can generally be referred to as claims of active interference by MDC, seek recompense for increased costs imposed by MDC's wrongful acts. While some such costs may result from delay, others may not (*e.g.*, the costs associated with having to redo a project because the plans initially provided were incorrect).

The distinction between delay damages and active interference damages has long been recognized in the law. *See American Bridge Co.* v. *New York*, 245 A.D. 535, 538-39 (N.Y. App. Div. 1935); *id.* at 540 (citing cases). While there is no authority from Virginia directly on point, we think Virginia would recognize an independent claim for damages resulting from active interference that were not themselves delay damages. Virginia has recognized a difference between mere delay and delay caused by active interference. *See Algernon Blair, Inc.* v. *Norfolk Redevelopment and Housing Authority*, 108 S.E. 2d 259, 263 (Va. 1959). The types of damages alleged by Stubbs are merely another type of damages resulting from active interference.

As damages for active interference or additional and extra work caused by the wrongful acts of the contractor are not themselves delay damages, they do not fall within the ambit of the "no damages for delay" clause, which by its terms precludes only those damages that result "from any delay."

The only remaining question then is whether Stubbs has proffered sufficient evidence as to non-delay damages to overcome a motion for summary judgment. Though the only evidence Stubbs proffered of active interference was a somewhat self-serving and conclusory affidavit by Dennis Stubbs, that affidavit did include Mr. Stubbs' assertions that "MDC ordered Stubbs to perform work in areas that were not ready for installation of plumbing work." J.A. 73. That allegation is sufficiently particular (though barely so) to support an active interference claim given that similar circumstances historically have been the gravamen of triable active interference claims. *See American Bridge Co.*, 245 A.D. at 538-39 (concluding that the state was liable for the damages caused by its premature directing of its contractor to begin work, despite the parties' adoption of a general "no damages for

delay" agreement). Additionally, in its itemized list of damages, Stubbs claims that it suffered $88,799.29 in damages from "Additional Labor Costs Due to Interferences, Poor Scheduling, Acceleration & Disruptions." S.J.A. 4. While some of these categories might encompass delay damages, others, like "Acceleration," clearly do not.

While Stubbs' complaint and the affidavit are far from pellucid as to the nature of damages incurred, we think it is clear that Stubbs could possibly be claiming non-delay damages in excess of $75,000, in which case it is entitled to have its case tried in federal court. If, upon further proceedings, it becomes clear that Stubbs is not actually claiming more than the requisite jurisdictional amount in non-delay damages, then dismissal for lack of subject matter jurisdiction would be appropriate at that time. But because, based on the record before us now, Stubbs may well have claims for non-delay damages in excess of $75,000, we vacate the district court's dismissal and remand.

*VACATED AND REMANDED*