Filed 4/21/14  Riverside County Transportation Commission v. Liston Brick Co. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| RIVERSIDE COUNTY TRANSPORTATION COMMISSION, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LISTON BRICK COMPANY OF CORONA, <br><br> Defendant and Appellant. | E054980 <br><br> (Super.Ct.No. RIC500888) <br><br> OPINION |

APPEAL from the Superior Court of Riverside County.  Gloria Trask, Judge.

Affirmed.

Law Offices of William B. Hanley and William B. Hanley for Defendant and Appellant.

Best Best & Krieger, Danielle G. Sakai, and Kira L. Klatchko for Plaintiff and Respondent.

## I. INTRODUCTION

Defendant Liston Brick Company of Corona (Liston) appeals from judgment in favor of plaintiff Riverside County Transportation Commission (RCTC) in RCTC's action for specific performance of an agreement for the sale and purchase of property. Liston contends the trial court improperly interpreted the agreement and RCTC's evidence was insufficient to carry its burden of proof; the trial court erred in failing to grant Liston prejudgment interest; and the trial court erred in awarding RCTC contractual attorney fees. We find no error, and we affirm.

## II. FACTS AND PROCEDURAL BACKGROUND

On August 11, 2006, Liston and RCTC entered into a written agreement (Agreement) under which Liston agreed to sell to RCTC real property (the Property) located at the intersection of Cajalco Road and Interstate 15 in Corona for a purchase price of $8,420,530. Liston represented that to the best of its knowledge, no hazardous materials were presently or previously located on the Property and no governmental actions requiring enforcement or cleanup of hazardous materials had been threatened, instituted, or completed. The Agreement defined "hazardous materials" as follows: "hazardous wastes, hazardous materials, hazardous substances or any other formulation intended to define, list or classify substances by reason of deleterious properties as such terms are defined in any applicable federal, state or local laws or ordinances, including without limitation any material defined as a 'hazardous material' in Section 25501 of the California Health and Safety Code, pesticides, fungicides, rodenticides, asbestos, and petroleum hydrocarbons and by-products."

2

The Property had formerly been used for the manufacture of bricks and later for recycling aluminum. A Phase I environmental assessment revealed that underground storage tanks and disposal pits had existed on the Property and that the Air Quality Management District had recorded violations at the Property. There had also been a citation for illegal off-site disposal of waste. RCTC's environmental consultant, Ninyo & Moore, recommended a geophysical survey, collection of physical samples, and analysis of the samples for chemicals. Escrow was to close on September 1, 2006, or 10 days following completion of a Phase II Environmental Site Assessment.

On October 12, 2006, the parties entered into a first amendment to the Agreement. RCTC wanted to perform additional environmental testing and wanted Liston to shut down its aluminum recycling operation and remove all improvements, foundations, and footings under the buildings. RCTC agreed to reimburse Liston for the removal of the improvements and agreed to release the money to Liston to pay for the demolition. The costs totaling $175,000 were secured by a deed of trust on the Property in favor of RCTC.

Paragraph 4 of the first amendment provided that if RCTC's further environmental investigation confirmed that hazardous materials existed on or under the Property in concentrations beyond applicable action levels, and that if RCTC agreed to proceed with the transaction, escrow would close "on or before fifteen (15) days following finalization and acceptance of the Remediation Plan (as defined below), including a determination that estimated remediation costs will be adequately secured by the Holdback Amount (as defined below)."

3

Paragraph 6 of the first amendment provided: "6. Escrow Holdback. The Purchase Price is based on a valuation of the Property free from contamination by Hazardous Materials. As a result of preliminary investigations, Buyer's consultants have recommended further environmental investigation, including a geotechnical investigation and, if recommended thereafter, a Phase II. If a Phase II is required and if it discloses the presence upon or under the Property of Hazardous Materials at action levels requiring remediation by governmental authorities having jurisdiction over such matters ('Governmental Authorities'), Buyer will cause its consultants to prepare a 'Remediation Plan,' setting forth in detail an estimated schedule and cost to complete the Remediation Plan. The final form of such Remediation Plan will be subject to review and approval by Governmental Authorities and Seller. If Seller has failed to object to the Remediation Plan in writing within fifteen (15) days after receipt, Seller will be deemed to have approved the Remediation Plan. If Seller objects in writing to the Remediation Plan within such period, Buyer and Seller and their respective environmental consultants will meet within ten (10) business days following Buyer's receipt of such written objections and attempt to reconcile Seller's objections to the Remediation Plan. If Buyer and Seller are unable to resolve Seller's objections, the determination of Governmental Authorities will be binding on Buyer and Seller." Paragraph 6 further provided for the holdback of an amount equal to 200 percent of the estimated cost to complete the remediation plan, not to exceed $3,000,000. Any remaining balance of the holdback, after implementation of the remediation plan and issuance of "closure" or "no further action" letters by relevant governmental authorities, would be released to Liston.

4

On March 6, 2007, the parties entered into a second amendment to the Agreement. Liston was then in default on the first trust deed on the Property. To avoid the loss of the Property through foreclosure, RCTC agreed to advance and pay $1,815,000 on the first trust deed and another $445,588 toward Liston's bankruptcy obligation. Those amounts would be credited against the purchase price. The Second Amendment stated that environmental testing and evaluation of the Property had been delayed because of concerns raised by the Hazardous Materials Management Division of the Riverside County Department of Environmental Health (HazMat), and RCTC had been unable to complete environmental testing and investigation to determine what remediation would be required.

HazMat transferred the matter to the California Department of Toxic Substance Control (DTSC) as the lead agency having jurisdiction over remediation for the site. In May 2008, RCTC submitted a work plan to DTSC. On May 21, 2008, Liston declared that it was unilaterally terminating the Agreement. On June 6, 2008, RCTC filed a complaint against Liston alleging causes of action for specific performance and breach of contract. The parties later agreed to an order for specific performance requiring compliance with and performance of the terms of the Agreement to complete the purchase of the Property. The parties agreed that the only issue remaining for trial was the amount of the holdback contemplated in Paragraph 6 of the first amendment.

Meanwhile, RCTC's investigation confirmed that the groundwater was not contaminated, but the soil was contaminated. RCTC's environmental consultant, Ninyo & Moore, prepared a remedial action plan dated September 21, 2009, and RCTC

5

provided Liston with a copy of that plan. The plan identified three alternatives for remediation. Alternative 2, the recommended plan, provided for soil excavation and off-site disposal at an estimated cost of $2,130,000. RCTC and its consultants met with Liston to discuss the September 2009 plan, and as a result of Liston's objections, agreed to revise the scope and approach of the plan, specifically, the volume of soil to be removed.

Ninyo & Moore then prepared an April 5, 2010, action plan. In the April 5 plan, the cost estimate for Alternative 2 was reduced to $816,000. A chart on page 32 of the April 5 plan stated the overall cost estimates for each of the three alternatives. The overall cost of Alternative 2 was shown to be $816,000. Another chart provided a schedule for the estimated completion times. Ninyo & Moore provided a copy of the plan to Liston. Ninyo & Moore also sent a copy of the April 5 plan to DTSC, which provided comments.

RCTC again revised the action plan in response to comments of DTSC and the Human and Ecological Risk Office. The DTSC approved the January 2011 plan subject to public comment requirements.

The matter proceeded to trial on the sole issue of the amount of the holdback. Liston moved for judgment under Code of Civil Procedure section 631.8. Liston argued that RCTC failed to carry its burden of proof to establish that Liston had had an opportunity to review a detailed cost estimate for the remediation. Liston also contended that the April 5, 2010, action plan went beyond the scope of the Agreement in that it

6

called for removal of materials that did not constitute hazardous waste as defined in the Agreement.

The trial court denied the motion. Liston then rested its case without submitting any additional evidence or calling any witnesses.

The trial court found in RCTC's favor and found that the holdback should be based on the $816,000 calculation, which Liston stipulated it had received and to which it did not object. The trial court found that the April 2010 plan and the January 2011 plan "contain adequate and sufficient detail regarding the estimated schedule and costs to complete the remediation to satisfy [RCTC's] obligation under Paragraph 6 of the First Amendment. The [plans] provide in detail the objectives of the investigation and remediation; the findings of hazardous substances; and the reasoning to support that the overall cost is appropriate under the circumstances." The court further found that Liston had received both those plans "and did not prepare or submit any written objections as required by Paragraph 6 . . . ." The court found that Liston was aware of its right to object because it had previously provided written objections to the September 2009 plan.

Judgment was entered, including an order for specific performance. The order stated that the purchase price should be reduced by $100,000 to reflect the initial escrow deposit, by $75,000 to account for an increased deposit under the Amendment, by $2,490,589 to account for the advance RCTC had given Liston to avoid foreclosure, and by $1,632,000, a holdback calculated at 200 percent of the $816,000 estimated cost of implementing the April 5, 2010, remedial plan. The order further stated that RCTC was entitled to contractual attorney fees.

7

RCTC filed a motion for costs, to which Liston objected.  RCTC also filed a motion seeking $335,660.90 in attorney fees.  After a hearing, the trial court granted RCTC all the attorney fees sought.

Additional facts are set forth in the discussion of the issues to which they relate.

## III.  DISCUSSION

### A.  Interpretation of Agreement

Liston contends the trial court improperly interpreted the agreement, and RCTC's evidence was insufficient to carry its burden of proof.  Specifically, Liston contends it did not receive adequate notice of the estimated cost of the remediation plan which would have allowed it to calculate the amount of the holdback, and Liston also disputes whether the materials that were the subject of remediation were in fact hazardous materials as defined by the Agreement.

#### 1. Standard of Review

The issue of what notice Liston actually received is one of fact to which we apply substantial evidence review.  Under that standard, "We """"consider all of the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference, and resolving conflicts in support of the [findings].  [Citations.]" [Citation.] We may not reweigh the evidence and are bound by the trial court's credibility determinations.  [Citations.]  Moreover, findings of fact are liberally construed to support the judgment.  [Citation.]'" [Citations.]' [Citation.]  '"The substantial evidence [standard of review] applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial."  [Citation.]'

8

[Citation.] 'The testimony of a single witness may be sufficient to constitute substantial evidence. [Citation.]' [Citation.]" (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.)

The question of what notice the contract required is a question of law: "The 'interpretation of a contract is subject to de novo review where the interpretation does not turn on the credibility of extrinsic evidence.' [Citation.]" (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1256.)

### 2. Analysis

#### (a) Notice given to Liston

Liston contends RCTC did not carry its burden of proving compliance with the notice requirements of the holdback provision.

It was undisputed that Liston received the September 21, 2009, remedial action plan and met with RCTC and its consultants to discuss that plan. However, the September 2009 plan provided to Liston did not include a one-page table of estimated remedial costs. In response to Liston's comments, RCTC's consultants prepared a revised plan, the April 5, 2010, plan, which reduced the estimated cost for Alternative 2 to $816,000. That plan was provided to Liston, but Liston did not object to or comment on that plan. That plan was also submitted to the DTSC, which provided comments and proposed revisions.

In response to the DTSC's comments, RCTC prepared another revised plan dated January 12, 2011. That plan showed the estimated cost for Alternative 2 to be $816,000,

9

but did not include a one-page table of estimated remedial costs.  It was undisputed that Liston was provided with a copy of the plan but did not comment on it.

Liston argues that because it was not provided with a one-page table entitled "estimated remedial alternative costs," (capitalization omitted) the April 2010 remedial action plan did not provide the detailed estimate of costs required by the Agreement, and Liston was therefore not required to respond to the April 2010 plan.  However, Liston *did* object to the September 2009 plan that was presented in substantially similar format, and RCTC revised the plan in response to Liston's comments.  We conclude the information RCTC provided in both plans was sufficient to trigger Liston's requirement to respond to the proposed plans within 15 days or to forfeit its objections.

### B.  Scope of Remediation

Liston further contends that RCTC included estimates for the cleanup of nonhazardous materials.  Liston based that argument on Crone's testimony that nonhazardous materials did not require cleanup, and the cost estimate included cleanup costs for "'non-RCRA [Resource Conservation and Recovery Act] hazardous waste'" at an estimated removal cost of $315,000.  However, Crone further testified that "Non-RCRA hazardous waste is a waste that meets the definition criteria in California law for a hazardous waste, but would not be defined as a federal hazardous waste," and it would be included as a hazardous material.  Crone testified that the term "hazardous waste" is an industry term of art, and "it also has definition in various statutes and by guidance provided by governmental regulatory agencies."  The term "material" is broader than the

10

term "waste."  The April 2010 plan stated that it had been "developed in accordance with applicable DTSC guidance . . . ."

The Agreement's definition of hazardous material, as set forth above, was expansive.  Crone's testimony did not show that the proposed remediation included any material that did not fit within that broad definition.  Moreover, having failed to object to or comment on the April 2010 plan, Liston forfeited any objection based on the scope of the work.

### C.  Prejudgment Interest

Liston contends the trial court erred in failing to grant Liston prejudgment interest.

Prejudgment interest is not available to a party unless that party is entitled to receive damages.  (Civ. Code, § 3287, subd. (a).)[1]  Because Liston has shown no such entitlement to damages, the trial court did not err in failing to award prejudgment interest.[2]

---

[1]  "(a) Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt.  This section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal corporation, public district, public agency, or any political subdivision of the state."  (Civ. Code, § 3287, subd. (a).)

[2]  We note that, citing *McGuire & Hester v. San Francisco* (1952) 113 Cal.App.2d 186, 193-194, RCTC also argues prejudgment interest was not awardable against it as a public entity.  However, Civil Code section 3287, subdivision (1) was amended in 1959 to provide that "[t]his section is applicable to recovery of damages and interest from any such debtor, including the state or any county, city, city and county, municipal

*[footnote continued on next page]*

**D. Attorney Fee Award**

Liston contends the trial court erred in awarding RCTC contractual attorney fees. More specifically, Liston argues (1) there was no evidence the requested fees were reasonable, (2) the trial court should have appointed an independent expert to evaluate the fee request and should have permitted discovery on the issue, and (3) RCTC did not establish its entitlement to attorney fees.

*1. Additional Background*

The attorney fee provision of the Agreement provided: "15.9 <u>Attorney's Fees.</u> In any action or proceeding brought to enforce or interpret any provision of this Agreement, or where any provision hereof is validly asserted as a defense, the prevailing party shall be entitled to recover actual attorneys' fees and all other litigation costs . . . ."

RCTC requested attorney fees totaling $355,660.90. The declaration of Danielle Sakai submitted in support of the motion stated that the law firm billed RCTC at discounted hourly rates ranging between $150 for summer associates and $260 for partners. Sakai stated those rates were well within or below the acceptable range of hourly rates for attorneys with similar experience in the area. Sakai stated that the case had been "extremely document-intensive" due to its nature, including exhibits totaling thousands of pages. Moreover, there had been extensive discovery, and the parties had attended private mediation and multiple settlement conferences. RCTC's counsel

---

*[footnote continued from previous page]*
corporation, public district, public agency, or any political subdivision of the state." (Stats. 1959, ch. 1735, p. 4186, § 1.) Thus, RCTC's reliance on *McGuire* is misplaced.

conferred with multiple consultants and experts, and had prepared for trial twice, including an originally scheduled jury trial before the issues had been pared down. RCTC provided copies of invoices evidencing the attorney fees.

Sakai stated in her declaration in support of the request for attorney fees: "Fees were incurred for review of environmental and administrative reports and documents, conferring with consultants and experts and opposing counsel to ensure that RCTC satisfied its obligations under the terms of the Agreement as well as to protect RCTC's interests. But for Liston Brick's attempt to terminate the Agreement, RCTC would not have incurred these attorney fees relating to administrative and regulatory activities. By Liston Brick refusing to cooperate with environmental due diligence investigation and raising meritless objections to proposed work plans and remediation reports, RCTC's efforts to obtain DTSC approval as a condition to the close of escrow were undoubtedly delayed, resulting in unnecessarily incurring attorneys' fees. RCTC incurred $46,336.80 in attorneys' fees to assist with necessary regulatory and administrative activities relating to environmental investigation and efforts to obtain DTSC approval for the remediation of the Property." (Original underscore.)

Sakai further stated in her declaration: "Liston Brick's refusal to allow RCTC to access the Property to conduct groundwater and soil analysis as mandated by the DTSC threatened RCTC's ability to complete the purchase of the Property and resulted in additional attorneys' fees for RCTC. As a consequence, RCTC was required to file the Right of Entry Action to obtain a court order to obtain access and proceed with environmental due diligence investigation. After a number of delays and continuances,

13

on December 29, 2008, the Court granted the petition and issued an order for RCTC's right of entry onto the Property.  In compliance with the Court's order, RCTC attempted to work with Liston Brick and its counsel to coordinate access to the Property.  However, through July 2009, Liston Brick continued to obstruct that access and raised a number of challenges that resulted in the incurring of additional attorneys' fees.  In an effort to secure access to continue the environmental investigation, RCTC incurred $50,3691.10 [*sic*] in attorney fees."  (Original underscore.)

Liston requested discovery in the trial court to determine the merits of a fee award and sought the appointment of a fee expert at RCTC's expense.  The trial court denied the request and awarded RCTC all the fees it sought, finding that the hourly rates and amount of time billed were reasonable.  The award included attorney fees in the amount of $46,336.80 for "administrative and regulatory activities" and in the amount of $50,369.10 for "right of entry" litigation.

### 2.  *Entitlement to Fees*

Liston argues that the trial court erred in awarding RCTC its attorney fees in the amount of $46,336.80 for "Administrative and Regulatory Activities" and in the amount of $50,369.10 for "Right of Entry Litigation."

As the party seeking an attorney fee award, RCTC had the "'burden of showing that the fees incurred were "allowable," were "reasonably necessary to the conduct of the litigation" and were "reasonable in amount.""'  (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 271.)  Under the Agreement, attorney fees were awardable "[i]n any

14

action or proceeding brought to enforce or interpret any provision of this Agreement . . . ."

"California case law clearly provides a trial court discretion to award a fee that compensates work performed in a collateral action that may not have been absolutely necessary to the action in which fees are awarded but was nonetheless closely related to the action in which fees are sought and useful to its resolution." (*Children's Hospital & Medical Center v. Bonta´* (2002) 97 Cal.App.4th 740, 779-780 (*Children's Hospital*).) In its statement of decision, the trial court found that "[a]s a preliminary matter, RCTC was required to obtain an Order for a Right of Entry to complete the balance of environmental testing because Liston Brick refused to allow RCTC entry onto the Property." In other words, the right of entry action was closely related to the current action and useful, if not necessary, to its resolution. Thus, the trial court did not abuse its discretion in awarding the fees requested for services connected to the right of entry action.

Sakai's declaration stated that fees connected to the administrative and regulatory activities were directly connected to obtaining DTSC approval for remediation and were caused by Liston's attempt to terminate the Agreement and failure to cooperate with environmental due diligence investigation, among other things. That declaration supported the trial court's discretionary determination that the fees for administrative and regulatory activities were closely related to the current action and useful to its resolution. (*Children's Hospital*, *supra*, 97 Cal.App.4th at pp. 779-780.)

We conclude the trial court did not abuse its discretion in awarding the challenged fees.

### 3. Amount of Fees

"With respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court. [Citation.] As our high court has repeatedly stated, '"'The "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.'"' [Citations.]" (*Children's Hospital*, *supra*, 97 Cal.App.4th at p. 777.) On appeal, we disturb the trial court's decision only "when there is no substantial evidence to support the trial court's factual findings or when there has been a miscarriage of justice." (*Frei v. Davey* (2004) 124 Cal.App.4th 1506, 1512.)

"It is well established that '"[t]he value of legal services performed in a case is a matter in which the trial court has its own expertise . . . . The trial court makes its determination after a consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." [Citation]' [Citation.]" (*Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1395.) Here, RCTC supported its request for attorney fees with a declaration and invoices substantiating the claimed fees. The hourly rates claimed for attorney services ranged between $150 and $260 per hour, which were stated to be at discounts of up to 45

16

percent from the firm's normal rates.  We conclude the trial court did not abuse its discretion in granting RCTC's request for fees.

### 4. Independent Expert

Liston contends the record RCTC provided did not enable the trial court to weigh the factors relevant to the determination of a reasonable fee award, and the trial court erred in denying Liston's request for the appointment of an independent expert to evaluate the fee request.

Evidence Code section 730 authorizes a trial court to appoint an independent expert when it appears that expert evidence may be required; however, the trial court's exercise of that authority is discretionary.  (E.g., *Ripley v. Pappadopoulos* (1994) 23 Cal.App.4th 1616, 1622, fn. 14.)  We conclude the trial court did not abuse its discretion in denying Liston's request for the appointment of an expert.

### 5. Discovery

Liston also appears to contend the trial court erred in denying its request for discovery,  Liston does not provide the required separate heading for that point in his brief (see Cal. Rules of Court, rule 8.204(a)(1)(B)), and we therefore deem the argument forfeited.  (*Pacific Gas & Electric Co. v. City and County of San Francisco* (2012) 206 Cal.App.4th 897, 905, fn. 9.)

## IV.  DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Plaintiff and Respondent.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                HOLLENHORST

                                 Acting P. J.

We concur:

MILLER

                  J.

CODRINGTON

                  J.